390 P.2d 858

**Jack B. WOOD and Shirl W. Hales, Plaintiffs and Appellants,**

v.

**NORTH SALT LAKE, a municipal corporation, Defendant and Respondent.**

**No. 9985.**

Supreme Court of Utah.

April 2, 1964.

Cotro-Manes & Cotro-Manes, Salt Lake City, for plaintiffs and appellants.

Thomas, Armstrong, Rawlings & West, Salt Lake City, for defendant and respondent.

HENRIOD, Chief Justice:

Appeal from a dismissal of a petition for writ of mandate. Reversed. No costs awarded.

Predecessors of plaintiffs subdivided and platted their property in 1955. The plat was accepted and dedicated by defendant and it was recorded in 1955. In 1957, defendant enacted a comprehensive zoning ordinance that included the platted property. In 1963 plaintiffs acquired a number of adjoining 60′ by 100′ lots, each containing 6,000 square feet. The 1957 ordinance required lots of not less than 7,000 square feet, thus presenting a conflict between such ordinance and the previously accepted and dedicated plat. Plaintiffs' application for a permit to build on one of their lots was denied for the *sole* reason that it lacked the necessary square footage. Hence this litigation.

Water mains were installed along the street abutting plaintiffs' lots at the time of the platting. Later, in 1961, and after the zoning ordinance, a sewer line was laid down in the streets, including that in front of the plaintiffs' lots. Both systems provided connection facilities in front of *each* lot, for which plaintiffs' predecessors paid their pro rata share for installation.

Defendant leans heavily on the fact that plaintiffs owned adjoining lots that *could be used* to conform to the area square footage required by the zoning ordinance, and argues that little damage would result *to these plaintiffs* by such readjustment. We cannot share the conclusion or the logic urged by reason of such circumstance. It loses sight of the fact that one owning two adjoining lots would be subject to the zoning ordinance, while a neighbor owning but one lot presumably would be either inoculated against the ordinance—or his lot of 60′ frontage, for which he may have paid several thousand dollars, plus the interest item thereon, together with payment pro rata for water and sewer facilities, virtually would be owner of a useless lot for lack of elbow room to expand the area. Such a state of affairs would seem to be objectionable under simple principles touching discrimination. The plat which was made an exhibit in this case significantly and graphically points this up when it shows that the lot immediately adjacent to the lot, subject of this action, is owned by a single-lot owner, who improved his lot prior to the zoning ordinance, and enjoys a 60′ lot, immune from the ordinance, while his next door neighbors, the plaintiffs herein, under the ordinance and defendant's contention, could not indulge such privilege.

In reasoning as we do, we are not unmindful of the authorities that sanction zoning ordinances where persons are not unreasonably damaged thereby,[1] but at the same time we are alert to and mindful of the authorities that strike down such ordinances where resulting damage is substantial, as we think is true in the case of a one-unit owner in the platted area here—and we cannot lay down a rule for him, but not one for him in the area who happens to have two adjoining lots.[2] We say this under the particular facts of this case, none other.

It is no answer to say that defendant is exercising the police power in which the matter of damage may not be protected constitutionally. Simple fact is that defendant to this date has not rejected or attempted to reject the plat it has accepted, and no effort appears to have been advanced to assert any police power through any appropriate procedures other than the ordinance itself, which conflicts with defendant's own acceptance of a dedicated plat. Certainly, not having done so, constitutional problems anent due process, reasonably are presentable and resolvable, depending on facts that might be developed more comprehensively than those found in this record.

There are overtones in this case regarding municipal zoning powers, constitutional sanctions, inconsequential damage, the pub-

1. Antieu, Municipal Corp. Law, Sec. 703 (3) pp. 423–4.

2. See Dowsey v. Village of Kensington, 257 N.Y. 221, 177 N.E. 427, 86 A.L.R. 642 et seq. for views pro and con re police power, etc.

lic welfare, abandonment and the like.[3] Without canvassing fine distinctions, we simply conclude that enforcement of the ordinance, subject of this action, eminently would be unfair, inequitable, discriminatory and inconsonant with realistic concepts of affinitive and privileged use of one's property. Enforcing this ordinance would render a 60′ lot, owned by one individual, utterly useless and no doubt a weed-invested liability, although the purchaser presumably was put to the expense mentioned above,— only to lose all at the expense of a small-personnelled village council,—perhaps by a split decision.

After platting of the subdivision and plenary acceptance and dedication thereof by the defendant government agency, it seems quite obvious that the subsequent zoning ordinance having to do only with *area* was nothing more nor less than a subterfugitive method of requiring property owners to have not a 60′ *frontage* but a 70′ or 75′ *frontage*. This is clearly demonstrated by an amended plat of part of the original subdivision which emphasized *frontage,* not *depth.* Some people don't like big backyards, and for that matter, not too many like much lawn to mow in the front.

To demonstrate the caprice of the zoning ordinance as to what *really* could happen in this strictly *area* ordinance obviously directed toward *frontage,* the following rather ridiculous result could ensue:

Plaintiffs have six adjacent 60′ lots. According to the ordinance, they could chop them up to make one lot looking like this:

The possible jigsaw mathematical pattern is obvious and could become ludicrous to the point of complete circumvention of

the zoning ordinance which ostensibly was bottomed on the elusive generalization that it was in the interest of public health, morals and welfare.

This ordinance, if sanctioned, easily could dry up the mortgage market for investors in platted subdivisions, could alienate title companies from insuring any lots therein,

3. A good argument could be urged that there is a significant difference between

abandonment of a pre-existing but presently nonexistent use, and a use initiated

discourage purchase of lots, and long-range subdivision development, impale title lawyers on the horns of a dilemma, and lead to a policy of accepting plats, only to sanction their arbitrary rejection, if one chooses not to build on vacant property within the year. All of which this court cannot deify. Therefore, we reverse with instructions to order the granting of the permit unless it is shown other than that the only reason for its denial is the existence of the *area* ordinance, subject of this litigation.

McDONOUGH, CALLISTER, CROCKETT and WADE, JJ., concur.

or to be initiated after enactment of a zoning ordinance pertaining to previously improved property as distinguished from vacant property that theretofore had not been used for business, residential or other purposes, posing a question whether one can abandon, within one year, a use that never existed before. Constitutional problems might be present in the latter case, but not in the former.