CONTRACTS FUNDING AND MORTGAGE EXCHANGE, a Utah corporation, Plaintiff and Respondent,

v.

Darrell D. MAYNES, Director, Salt Lake County Building and Zoning Enforcement Department, Defendant and Appellant.

CONTRACTS FUNDING AND MORTGAGE EXCHANGE, a Utah corporation, Plaintiff and Respondent,

v.

BOARD OF SALT LAKE COUNTY COMMISSIONERS, Defendant and Appellant.

No. 13608.

Supreme Court of Utah.

Nov. 4, 1974.

Carl J. Nemelka, Salt Lake County Atty., John G. Avery, Ralph D. Crockett, Richard S. Shepherd, Deputy Salt Lake County Attys., Salt Lake City, for defendants and appellants.

J. Richard Bell, Bell & Bell, Salt Lake City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal by the County from a judgment saying plaintiff should be allowed to develop a mobile home project on vacant, unzoned property. Affirmed.

Taking substantially the defendants' statement of the facts, in brief they were as follows: Plaintiff had agreed, on October 17, 1972, to purchase a piece of unzoned property in the County through the Probate Court. On December 4, 1972, the County Commissioners had a defectively noticed public hearing to determine why all of the unzoned County property categorically should not be zoned.

Plaintiff appeared and requested no zoning at that time. The request was granted. Then plaintiff asked for a conditional use permit, directed to the County's Planning Commission, for construction of the mobile homes. On March 3, 1973, the latter considered the request, and conditionally approved the application upon its staff checking the matter and reporting back, which it did on March 27, 1973, about three weeks later, so that residents of the area could appear and express their opinions.

At the March 27th meeting of the Planning Board, plaintiff's application for a building permit *verbally* was denied. Written notice of such denial was given a week or so later, whence plaintiff appealed directly to the Commission, thus anchoring the matter.

On May 27, 1973, the Probate Court confirmed plaintiff's offer and the inchoate purchase was concluded. On August 7, 1973, plaintiff again asked for a building

permit, and on August 9, 1973, *two days later,* the Commission not only denied the appeal, but passed a zoning ordinance excluding plaintiff's proposal to construct the homes, indirectly interdicting any go-ahead permission.

Therefore, as we see it, the plaintiff had a right to build what it said it wanted to build, *if it had filed an application for a permit* to do so.

There is nothing in this record to indicate that the County or anyone else denied the application for a permit because of failure to file something, pay something, do something or violate something. The presumption in this case is in favor of the applicant's right, with incidental, but serious constitutional and other problems posed by the facts here as to due process, impairment of the obligation of contracts, scope of sovereign authority, etc.

There is considerable urgence in this, some of which appears to be gratuitous, and urged for the first time on appeal, suggesting an omnipotence in County government to disturb or destroy pre-existing property rights, which seems to be the nub of the case.

We think the only way the County could have justified a reversal of the trial court's decision, would have been to show that "Contracts," after having been denied the opportunity (which was not granted here), had not satisfied some kind of procedural, governmental or other regulation as a condition precedent to the application's grant, —which the County here completely has failed in its task to establish.

The simple fact is, that a property owner, having done everything necessary under existing laws, cannot be expected to be circumscribed by ex post facto modus operandi leges, such as zoning ordinances presuming to upside-down the hour glass.

Defendants' thrust here seems to be that because there was some kind of meeting of residents of the area, the denial of plaintiff's application was based on "new evidence produced by the local residents *who opposed the construction* . . ." There is nothing in the record about this or about who and how many did not oppose it, and such a conclusion as is stated in defendants' brief is a non sequitur based on an unidentified number of unnamed, undesignated persons to whom the Planning Commission (that verbally had approved the application) nor the County Commission, without findings of fact of any kind, and no apparent opportunity for cross-examination, must be subservient or obeisant, when a citizen's property rights effectively are being destroyed.

The weakness of defendants' case is 1) its failure to justify what it did by anything save hearsay and opinion evidence, and pressure of some interested persons, out of which arose 2) an ordinance which, if sustained as to the property subject of this litigation, would destroy property rights and emasculate and eliminate laws and regulations extant at the time application for a permit was made,—by retrospection,—and effective by such ex post facto determination, as of a date nearly a year before. If this be permissible there is no reason why the ordinance could not reach back five years, a decade or earlier. Furthermore, 3) Defendants' claim that at the time of plaintiff's application, a conditional use would have to be shown,—there is nothing in the record to show that plaintiff was asked for maps, data, evidence or anything else,—since it was never given any conditions with which it must have and may have complied,—only nothing but an aribtrary turn-down.

CALLISTER, C. J., and TUCKETT, J., concur.

ELLETT and CROCKETT, JJ., concur in the result.