WESTERN LAND EQUITIES, INC., a Utah Corporation; LeGrand E. Reeder and Leah Dawn Reeder, Plaintiffs and Respondents,

v.

CITY OF LOGAN, a Municipal Corporation; the Logan City Municipal Council; Mayor Desmond L. Anderson; Darwin W. Larsen; Carol W. Clay; Loye E. Martindale; Claude J. Burtenshaw and Glenn T. Baird, Defendants and Appellants.

No. 16321.

Supreme Court of Utah.

Sept. 5, 1980.

J. Blaine Zollinger, Logan City Atty., Logan, for defendants and appellants.

John Preston Creer, Kent B. Scott, and Brian Ted Stewart of Senior & Senior, Salt Lake City, for plaintiffs and respondents.

STEWART, Justice:

Defendants appeal from a ruling of the district court that the City of Logan unlawfully withheld approval of plaintiffs' proposed residential plan and was estopped from enforcing a zoning change that prohibits plaintiffs' proposed use. We affirm the trial court's order.

In February 1969 plaintiffs purchased 18.53 acres of property within the City of Logan. In April 1976, pursuant to a new land use ordinance, the property was zoned M–1, a manufacturing zone which permitted single–family dwellings. Plaintiffs' intent was to use the property for moderately priced single–family housing.

The procedure for securing approval of single–family residential subdivisions is established by city ordinance. The ordinance requires consultation with the city planning commission, preparation and submittal of a preliminary plan showing compliance with minimum requirements of the subdivision ordinance, and approval of both preliminary and final plans by the city planning commission. The planning commission's practice is to introduce the preliminary plan at one meeting ("first reading") and discuss its merits and take action in a second meeting. Plaintiffs' project was introduced on July 13, 1977; the second reading was scheduled for August 10, at which time the advisability of the residential development was questioned and the matter was tabled and referred to the municipal council. On August 18, the municipal council reviewed the matter and referred it back to the planning commission with a recommendation that protective covenants be drawn up and that more roadways in and out of the proposed subdivision be provided. The second reading of the preliminary plan occurred before the planning commission on September 14, and the matter was tabled for 60 days. On October 12 the planning commission went on record as opposing subdivisions in M–1 zones, and on November 9 the commission rejected the proposed subdivision on the following grounds:

(1) Development of the proposed residential subdivision was contrary to the land use ordinance and to the city's master plan;

(2) The access roads provided by the plan were inadequate;

(3) The location of the railroad on three sides of the proposed subdivision made it an inappropriate site for housing.

In November plaintiffs unsuccessfully appealed the decision of the planning commission to the municipal council, and in December plaintiffs filed a complaint in district court. A restraining order was issued on January 3, 1978, enjoining the city from amending its zoning ordinance. The injunction was lifted on April 18, 1978, at which

time a change in the zoning ordinance that had been enacted on January 19, 1978, became effective as it applied to plaintiffs' property.

In connection with plaintiffs' motion for summary judgment, the parties submitted stipulated statements of facts and issues. The issues submitted to the court were:

1. Did the M1 Land Use Description as set forth in the Logan City Land Use Ordinance of 1976, prior to the January 31, 1978 amendment, permit the development of subdivisions consisting of single family dwelling units on property zoned M1?

2. Does the amendment to the M1 Land Use Description of the Logan City Land Use Ordinance of 1976, which was adopted January 31, 1978 and which prohibits the development of single family dwelling units in the M1 zone except by special use permit, give Defendants the authority to deny approval of Plaintiff's Willow Creek subdivision which was submitted prior to the amendment ...?

Plaintiffs sought a determination, as a matter of law, that they had a vested right to develop a subdivision of single–family dwellings on their property and that defendants were estopped from withholding approval of the subdivision.

The trial court in its findings of fact and conclusions of law held that plaintiffs' proposed development was permissible under the zoning regulations in existence prior to January 31, 1978, that plaintiffs had substantially complied with procedural requirements and had a vested right to develop the proposed subdivision, and that defendants were estopped from withholding approval of plaintiffs' subdivision on the basis of the amended ordinance enacted after the application for subdivision approval had been submitted.

On appeal defendants argue that the planning commission was justified in its disapproval of plaintiffs' proposed subdivision because of its undesirable or nonconforming aspects. However, the statement of facts stipulated to by the parties and

submitted to the trial court contained the following language:

It has not been contended by defendants that this preliminary plan did not comply in all particulars with the minimum requirements of the Logan City subdivision Ordinance with the exception that Logan City has raised questions concerning ingress and egress in and out of the subdivision, the fact that the subdivision is surrounded on three sides by railroad tracks and the need to establish protective covenants restraining manufacturing uses within the subdivision . . . .

The order of the court below made plaintiffs' right to develop their proposed subdivision contingent upon their compliance "with the reasonable requirements of the Logan City Ordinance." The trial court did not rule on the issue of whether the developers had failed, or were unable, to meet those requirements. We therefore do not consider on this appeal defendants' arguments concerning specific objectionable features of the subdivision plan.

Defendants also contend that, in any event, the application for approval of a subdivision does not create vested rights in the owner which immunize him from subsequent zoning changes. Since the decision of the court below was based on a finding that plaintiffs did have such a vested right, and not on the arbitrariness or unreasonableness of the commission's action, we deal only with the issue of whether the amendment to the zoning ordinance enacted by the city could be retroactively applied to plaintiffs' application for subdivision approval.

■ It is established that an owner of property holds it subject to zoning ordinances enacted pursuant to a state's police power. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). With various exceptions legislative enactments, other than those defining criminal offenses, are not generally subject to the constitutional prohibitions against retroactive application. The legality of retroactive civil legislation is tested by general princi-

ples of fairness and by due process considerations.[1]

This Court has previously dealt with the issue of retroactive application of zoning laws in *Contracts Funding & Mortgage Exchange v. Maynes*, Utah, 527 P.2d 1073 (1974). In *Contracts Funding* the plaintiff arranged to purchase property which was unzoned, and the application to construct mobile homes on the property was conditionally approved. Following a period of further review, during which time the objections of neighbors were considered, the building permit was denied, and soon thereafter a zoning ordinance was passed which excluded plaintiff's proposed use. This Court held that the date of application for a building permit fixed the applicable zoning laws and that the application could not be denied on the basis of a subsequently-enacted ordinance. There was no contention in that case that there were countervailing public interests that outweighed the right of the property owner to use his land pursuant to the law in effect at the time of application for a permit.

The holding of *Contracts Funding* is not in accord with the rule generally accepted in other jurisdictions that an applicant for a building permit or subdivision approval does not acquire any vested right under existing zoning regulations prior to the issuance of the permit or official approval of a proposed subdivision. Generally, denial of an application may be based on subsequently-enacted zoning regulations. See 8 McQuillin, *Municipal Corporations* § 25.155 (1976); 1 Anderson, *American Law of Zoning* § 6.23 2d ed. (1976); and cases cited in Annot., 50 A.L.R.3d 596, 607 (1973).

However, for the reasons discussed below, we are of the view that the majority rule fails to strike a proper balance between public and private interests and opens the

area to so many variables as to result in unnecessary litigation. We hold instead that an applicant for subdivision approval or a building permit is entitled to favorable action if the application conforms to the zoning ordinance in effect at the time of the application, unless changes in the zoning ordinances are pending which would prohibit the use applied for, or unless the municipality can show a compelling reason for exercising its police power retroactively to the date of application.

In the present case, the trial court found that plaintiffs had acquired a vested development right by their substantial compliance with procedural requirements and that the city was estopped from withholding approval of the proposed subdivision. The court used the language of zoning estoppel, a principle that is widely followed.[2] That principle estops a government entity from exercising its zoning powers to prohibit a proposed land use when a property owner, relying reasonably and in good faith on some governmental act or omission, has made a substantial change in position or incurred such extensive obligations or expenses that it would be highly inequitable to deprive the owner of his right to complete his proposed development.[3]

The focus of zoning estoppel is primarily upon the conduct and interests of the property owner. The main inquiry is whether there has been substantial reliance by the owner on governmental actions related to the superseded zoning that permitted the proposed use. The concern underlying this approach is the economic hardship that would be imposed on a property owner whose development plans are thwarted. Some courts hold that before a permit is issued no action of the owner is sufficient reliance to bar application of changes in zoning ordinances because there has been

1. See discussion of retroactive legislation in Cunningham and Kremer, *Vested Rights, Estoppel, and the Land Development Process*, 29 Hastings L.J. 623, 660 et seq. (1978).

2. See *People v. County of Cook*, 56 Ill.App.2d 436, 206 N.E.2d 441 (1965); Heeter, *Zoning Estoppel: Application of the Principles of Equi-*

*table Estoppel and Vested Rights to Zoning Disputes*, 1971 Urban L.Ann. 63.

3. These requirements are discussed in Heeter, *supra* n.2, and Delaney and Kominers, *He Who Rests Less, Vests Best: Acquisition of Vested Rights in Land Development*, 23 St. Louis U.L.J. 219 (1979).

no governmental act sufficient to support an estoppel. Accordingly, a landowner is held to have no vested right in existing or anticipated zoning. *Avco Community Developers, Inc. v. South Coast Regional Comm'n*, 17 Cal.3d 785, 132 Cal.Rptr. 386, 553 P.2d 546 (1976). Other courts consider any substantial change of position in determining the estoppel issue. This Court in *Wood v. North Salt Lake*, 15 Utah 2d 245, 390 P.2d 858 (1964), held a zoning ordinance change requiring larger lots unenforceable because water mains and sewer connections had already been provided for lots that conformed in size to a previous ordinance. The Court stated that enforcement of the new ordinance in those circumstances would be unfair and inequitable.

Generally, "substantial reliance" is determined by various tests employed by the courts—for example, the set quantum test, the proportionate test, and a balancing test. The set quantum test, used by the majority of courts, determines that an owner is entitled to relief from new, prohibitory zoning if he has changed his position beyond a certain point, measured quantitatively. A related test is the proportionate test, which determines the percentage of money spent or obligations incurred before the zoning change as compared with the total cost. The problem with both of these tests is that there is no predictable point short of adjudication which separates reliance that is less than "substantial" from the reliance sufficient to result in a vested right or to support an estoppel.

The balancing test, although likely to produce a more fair outcome in a particular case, also results in little predictability. The test weighs the owner's interest in developing his property and the reasonableness of his proposed use against the interests of public health, safety, morals, or general welfare. If the gain to the public is small when compared to the hardship that would accrue to the property owner, the actions of the owner in preparation for development according to a formerly permitted use may be seen as sufficiently substantial to justify the issuance of a permit or continuation of development despite an amendment to the zoning ordinances. See *Nott v. Wolff*, 18 Ill.2d 362, 163 N.E.2d 809 (1960).

An additional requirement generally considered in zoning estoppel cases is that of the existence of some physical construction as an element of substantial reliance. Preconstruction activities such as the execution of architectural drawings or the clearing of land and widening of roads are not sufficient to create a vested right, nor generally are activities that are not exclusively related to the proposed project. *Fairlawns Cemetery Ass'n v. Zoning Comm'n*, 138 Conn. 434, 86 A.2d 74 (1952); *F.L.D. Construction Corp. v. Walsh*, 357 N.Y.S.2d 112, 45 A.D.2d 832 (1974); *Edelbeck v. Town of Theresa*, 57 Wis.2d 172, 203 N.W.2d 694 (1973).

If the substantial reliance requirement of zoning estoppel were applied to the facts of the present case, we could not agree with the trial court that plaintiffs' "substantial compliance" with procedural requirements justified the estoppel of the city's enforcement of a new zoning ordinance. Although plaintiffs allege they proceeded with subdivision plans and incurred significant costs with the encouragement of certain city officials, they had not yet received official approval of their plan, and their expenditures were merely for surveying and preliminary plans. The record indicates that plaintiffs spent $1,335 for a boundary survey and $890 for the preparation of a preliminary subdivision plat. The boundary survey has value regardless of the city's approval or disapproval of the plaintiffs' proposal. The expenditure of $890 for the plat is not significant in relation to the size of the parcel and is not substantial enough to justify an estoppel with regard to the enforcement of valid zoning ordinances that became effective before official approval of plaintiffs' proposed subdivision.

In rejecting the zoning estoppel approach in this matter, we are not prepared to state that it would never be relevant to a determination of the validity of the retroactive application of a zoning ordinance. We are of the view, however, that the relevant

public and private interests are better accommodated in the first instance by a different approach.

A number of other approaches have been followed or suggested as alternatives to zoning estoppel in an effort to promote fairness and consistency. The Maryland Court of Appeals, for example, in *Mayor and City Council of Baltimore v. Crane*, 277 Md. 198, 352 A.2d 786 (1976), recognized a "vested contractual interest" that enabled landowners to proceed with a development that had been disapproved by the city in reliance on a new ordinance. The developers had previously conveyed 4.6 acres of their 11.19 acre tract to the city pursuant to an ordinance that promised density benefits in consideration for land dedications. The court held that the owners had acquired no vested right to build in reliance on an existing zoning classification, but that the city was estopped from enforcing a new zoning ordinance against defendants because of their substantial change in position in accepting and acting upon the city's offer by ordinance. Under those circumstances the court ruled that the developers' interests were constitutionally protected against impairment.

Courts in several states have adopted the view, not unlike that stated in *Contract Funding & Mortgage Exchange v. Maynes*, Utah, 527 P.2d 1073 (1974), that an application for a building permit creates a vested right as of the time of application. Pennsylvania, one of these states, initially followed the general rule that a vested right accrued when an owner could show substantial reliance, made in good faith, on a validly issued permit.[4] *Schechter v. Zoning Board of Adjustment*, 395 Pa. 310, 149 A.2d 28 (1959). In 1968 the Pennsylvania court in *Gallagher v. Building Inspector, City of Erie*, 432 Pa. 301, 247 A.2d 572 (1968), eliminated the need to show reliance on a permit to create a vested right when the amendment to the zoning ordinance was not considered by the city council until after a permit had been issued. At the present time Pennsylvania follows what is termed the "pending ordinance rule." This rule provides that an application for a permitted use cannot be refused unless a prohibiting ordinance is pending at the time of application. *Boron Oil Co. Kimple*, 445 Pa. 327, 284 A.2d 744 (1971), stated the applicable test as follows:

[A]n ordinance is pending when a Borough Council has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning. [284 A.2d at 747.]

The pending ordinance rule reflected the court's attempt to

. . . balance the interest of the municipality in effecting a change in its zoning laws free from the perpetuation of nonconforming uses against the interest of the individual property owner to be free from lengthy restraints upon the use of his property. [284 A.2d at 747.]

The court in *Boron Oil Co.*, also imposed a duty of good faith on the part of the municipality:

[I]t is to be emphasized that the various governmental authorities charged with the responsibility of proposing, promulgating and administering local zoning and planning laws are under a basic duty to act reasonably. In sum, a building permit may be properly refused in situations such as the one at bar *only* when the municipality acts initially in good faith to achieve permissible ends and thereafter proceeds with reasonable dispatch in considering the proposed rezoning. [284 A.2d at 748.]

The Pennsylvania cases do not indicate whether an owner need show substantial reliance on the permitted zoning prior to the advertisement of a zoning change as an element of acquiring a vested development right. Nor is there a time limit on an owner's right to develop in accordance with a superseded use pursuant to the pending ordinance rule.

---

4. The Pennsylvania experience with the vested zoning rights issue is analyzed in Keiter, *Emerging from the Confusion: Zoning and*

*Vested Rights in Pennsylvania*, 83 Dickinson L.Rev. 515 (1979).

Idaho has also adopted the view that an applicant is entitled to a building permit upon compliance with the zoning ordinance in effect at the time of the application, at least where no zoning change is pending. *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 448 P.2d 209 (1968). In *Ready-to-Pour, Inc. v. McCoy*, 95 Idaho 510, 511 P.2d 792 (1973), the court ruled that the elimination of an industrial zone after an applicant had sought a building permit for erection of a concrete batch plant did not alter the applicant's right to a building permit. The zoning change was found to be confiscatory, arbitrary, and capricious. The court upheld the applicant's right to a permit to build in a formerly authorized industrial district and stated, "People are entitled to rely upon the law." [511 P.2d at 797.] The applicant in the case had purchased its property in reliance on the city council's previous action in creating the industrial district and was held to be entitled to a permit to proceed.

In *Pure Oil Division v. City of Columbia*, 254 S.C. 28, 173 S.E.2d 140 (1970), the South Carolina court stated that in the absence of "intervening considerations of public necessity,"

> [w]e see no sound reason to protect vested rights acquired after a permit is issued, and to deny such protection to similar rights acquired under an ordinance as it existed at the time a proper application for a permit is made. In both instances, the right protected is the same, that is, the good faith reliance by the owner on the right to use his property as permitted under the Zoning Ordinance in force at the time of the application for a permit. [173 S.E.2d at 143.]

The State of Washington has also refused to follow the general rule that building permits are not protected against revocation by subsequent zoning change unless a permittee has gained a vested right through a substantial change in position in reliance on the permit. As stated in *Hull v. Hunt*, 53 Wash.2d 125, 331 P.2d 856, 859 (1958):

> Notwithstanding the weight of authority, we prefer to have a date certain upon which the right vests to construct in accordance with the building permit. We prefer not to adopt a rule which forces the court to search through (to quote from *State ex rel. Ogden v. Bellevue*, [45 Wash.2d 492, 275 P.2d 899] supra,) "the moves and countermoves of  *  *  * parties  *  *  * by way of passing ordinance and bringing actions for injunctions"–to which may be added the stalling or acceleration of administrative action in the issuance of permits–to find that date upon which the substantial change of position is made which finally vests the right. The more practical rule to administer, we feel, is that the right vests when the party, property owner or not, applies for his building permit, if that permit is thereafter issued. This rule, of course, assumes that the permit applied for and granted be consistent with the zoning ordinances and building codes in force at the time of application for the permit.

The court met the argument that its rule would result in speculation in building permits by noting that the cost of preparing plans and meeting permit requirements was such that an applicant would generally have a good faith expectation of proceeding according to his application, and, furthermore, that the city building code renders a permit null and void if work authorized by the permit does not commence within 180 days.

A "rule of irrevocable commitment" was suggested as an appropriate standard in an extensive treatment of the vested development rights problem in Cunningham and Kremer, *Vested Rights, Estoppel, and the Land Development Process, supra,* n.1. This approach would protect from new laws any project to which the developer has made a "reasonable and irrevocable commitment of resources." The scope of the protection granted would be determined by a detailed analysis of the resources committed, the planned objectives of the project, and the concerns of the general welfare. If the investment made in the project prior to passage of a new prohibitory zoning regulation could be utilized for another legitimate use, there would be less need to protect the

developer's right to proceed than if significant expenditures were uniquely related to the original project.

Minnesota utilized this type analysis in *Hawkinson v. County of Itasca*, 304 Minn. 367, 231 N.W.2d 279 (1975), in which the issue was whether the plaintiff had acquired a vested right to complete the work he had commenced on a nonconforming commercial–recreational development in an area that had been rezoned residential. The court stated:

> The kind of improvements which were made on the outlots were as consistent with the development of a residential area as with a commercial–recreational area. The grading and clearing of the land, and the dredging and development of the pond and stream added substantial value to the property for residential purposes. The effort and expense applied to these outlots are not wasted by the zoning.

> The same may be said of the lakeshore property. While it is true that plaintiff's long–range plans have been frustrated, he is not prevented from carrying on at the same level which obtained before the zoning ordinance was adopted. [231 N.W.2d at 282.]

The court held that the expenses incurred by plaintiff did not result in such substantial prejudice as to create in him a vested right to complete the project. Although this approach seeks to avoid economic waste, it does not foster predictability.

■ A vested right in a particular development scheme may be created by statute. For example, in Pennsylvania, § 508(4) of the Municipalities Planning Code confers a vested right on property owners who have previously received approval of a subdivision plan in which the lots are too small to conform to the requirements of a newly–enacted ordinance. This vested right has a three–year duration. The California Legislature has also considered bills which would grant a limited expansion of vested rights.[5]

In our view the tests employed by most other jurisdictions tend to subject landowners to undue and even calamitous expense because of changing city councils or zoning boards or their dilatory action and to the unpredictable results of burdensome litigation. The majority rule permits an unlimited right to deny permits when ordinances are amended after application and preliminary work. It allows government in many cases broader power with regard to land regulation than may be justified by the public interests involved. A balancing test, though geared toward promoting fairness, must be applied on a case–by–case basis and offers no predictable guidelines on which landowners can intelligently base their decisions regarding extensive development projects. Tests currently followed by the majority of states are particularly unsatisfactory in dealing with the large multistage projects. The threat of denial of a permit at a late stage of development makes a developer vulnerable to shifting governmental policies and tempts him to manipulate the process by prematurely engaging in activities that would establish the substantial reliance required to vest his right to develop when inappropriate.

The economic waste that occurs when a project is halted after substantial costs have been incurred in its commencement is of no benefit either to the public or to landowners. In a day when housing costs have severely escalated beyond the means of many prospective buyers, governmental actions should not be based on policies that exacerbate a severe economic problem without compelling justification. Governmental powers should be exercised in a manner that is reasonable and, to the extent possible, predictable.

On the other hand, a rule which vests a right unconditionally at the time application for a permit is made affords no protection for important public interests that may legitimately require interference with planned private development. If a proposal

5. See McCown Hawkes and King, *Vested Rights to Develop Land: California's Avco Decision and Legislative Responses*, 6 Ecology L.Q. 755 (1978).

met zoning requirements at the time of application but seriously threatens public health, safety, or welfare, the interests of the public should not be thwarted.

The above competing interests are best accommodated in our view by adopting the rule that an applicant is entitled to a building permit or subdivision approval if his proposed development meets the zoning requirements in existence at the time of his application and if he proceeds with reasonable diligence, absent a compelling, countervailing public interest. Furthermore, if a city or county has initiated proceedings to amend its zoning ordinances, a landowner who subsequently makes application for a permit is not entitled to rely on the original zoning classification.

This rule follows from and extends our previous decision in *Contracts Funding & Mortgage Exchange v. Maynes*, Utah, 527 P.2d 1073 (1974). It is intended to strike a reasonable balance between important, conflicting public and private interests in the area of land development. A property owner should be able to plan for developing his property in a manner permitted by existing zoning regulations with some degree of assurance that the basic ground rules will not be changed in midstream. Clearly it is desirable to reduce the necessity for a developer to resort to the courts. An applicant for approval of a planned and permitted use should not be subject to shifting policies that do not reflect serious public concerns.

At the same time, compelling public interests may, when appropriate, be given priority over individual economic interests. A city should not be unduly restricted in effectuating legitimate policy changes when they are grounded in recognized legislative police powers. There may be instances when an application would for the first time draw attention to a serious problem that calls for an immediate amendment to a zoning ordinance, and such an amendment would be entitled to valid retroactive effect.

It is incumbent upon a city, however, to act in good faith and not to reject an application because the application itself triggers zoning reconsiderations that result in a substitution of the judgment of current city officials for that of their predecessors. Regardless of the circumstances, a court must be cognizant of legitimate public concerns in considering whether a particular development should be protected from the effects of a desirable new law.

In the present case, the zoning of the property in question was found by the trial court to have permitted the proposed use at the time of the application. The owners had received encouragement from city officials, although no official approval was rendered. After the application, the city council members decided to reexamine the pertinent zoning regulation and thereafter voted to amend or "clarify" the zoning ordinance to disallow subdivisions in an M–1 zone and permit residences only by special permit. Their actions may have had a reasonable basis. It was argued that fire protection would be undermined because of limited access roads, but it does not appear the problem would be any less serious if the unarguably–permitted manufacturing facilities were erected instead of single–family houses. Objections as to inadequate sidewalks and other problems can be handled by requiring modification of specifications that do not meet city subdivision requirements. Indeed, the order of the trial court stated that the developers must comply with all the reasonable requirements of the city's subdivision ordinance.

We do not find the reasons given by the city for withholding approval of plaintiffs' proposed subdivision to be so compelling as to overcome the presumption that an applicant for a building permit or subdivision approval is entitled to affirmative official action if he meets the zoning requirements in force at the time of his application.

The order of the trial court is affirmed. No costs awarded.

MAUGHAN, WILKINS and HALL, JJ., concur.

CROCKETT, C. J., concurs in result.