Mark L. JOHNSON, Carol Ann Nielson, on behalf of themselves and as representatives of all others similarly situated, Plaintiff and Appellant,

v.

UTAH STATE RETIREMENT OFFICE, a Utah State Agency, Defendant and Respondent.

No. 16728.

Supreme Court of Utah.

Nov. 25, 1980.

Stanford B. Owen and Hal N. Swenson of Fabian & Clendenin, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Mark A. Madsen, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

STEWART, Justice:

Plaintiffs appeal from the trial court's order dismissing their complaint. They sought an award of the funds contributed to the state retirement system on their behalf by their employer, Payson City Hospital.

Plaintiffs had been employees of Payson City Hospital and had participated in the retirement plan established by the Utah State Retirement Act, §§ 49–10–1 *et seq.*[1] Both the hospital employees and the hospital had made contributions to the plan. The plan provided that the employees would receive benefits upon retirement, death, or disability.

On October 1, 1977, Payson City sold the hospital to a private entity. As a consequence, the hospital's affiliation with the state retirement system was terminated. Although plaintiffs continued their employment with the hospital, they were deemed subject to the provisions of § 49–10–24, which is entitled "Options of terminating employee—Withdrawal of accumulated contributions—Inactive membership."[2] Pursuant to that statute, plaintiffs were given the options of (1) withdrawing the accumulated contributions in their individual accounts paid by the employees or on behalf of the employees and forfeiting any matching funds paid by their employer, or (2) leaving their accounts in the fund intact and retaining inactive status as members of the retirement system, with benefits based on both employer and employee contributions during the period of covered service payable upon retirement, disability, or death. A critical issue in this case is whether the term "accumulated contributions" includes payments made by the employing units.[3]

---

1. All statutory references are to Utah Code Ann. (1953), as amended.

2. Section 49–10–24 provides:

   If a member shall for any cause, except retirement, permanent or temporary disability or death, cease to be employed in covered services for an employer he may:

   (a) By written request directed to the retirement office receive a refund of all his accumulated contributions, less a withdrawal fee the amount of which the retirement board shall establish by regulation for the purpose of reimbursing its administrative fund for the cost entailed by said withdrawal. In the event of such election, a terminating employee upon later re-employment by an employer under the provisions of this act, unless he redeposits his refund as herein permitted, shall be treated as a new employee and his service history and benefit rights shall then be based upon current services from the date of said re-employment in covered services.

   (b) Leave his account in the fund intact. In the event of such election, a terminating employee shall retain status as a member of the system, excepting for the lack of contributions paid into the fund by him or on his behalf. In the event of his re-employment by an employer for services covered by this act, his service history and benefit rights shall be based upon the prior service credit and current service credit accredited to him at the time of his most recent termination of employment, as well as upon the current service credit that he acquires as the result of his re-employment.

   Upon the attainment of retirement age, an inactive member shall have the same rights to receive retirement benefits, if eligible therefore, as any active employee member.

3. Section 49–10–20 provides:

   The system shall be maintained on a financially and actuarially sound basis by means of contributions made jointly by the employing units and by the active members of the system.

   (a) Each member of the system shall make the following contribution to the retirement fund, such contributions to be deducted from monthly salary payments by his employer and paid by it to the retirement fund: Effective July 1, 1967, the contribution rate shall be four percent (4%) of compensation; effective July 1, 1969, the contribution rate shall be four and one-quarter per cent (4¼%) of compensation; effective July 1, 1971, the contribution rate shall be four and one-half per cent (4½%) of compensation; effective July 1, 1973, the contribution rate shall be four and three-quarters per cent (4¾%); and effective July 1, 1975, the contribution rate shall be five per cent (5%) of compensation.

   All member contributions shall be credited by the retirement office to the account of the individual in the fund. Said amount together with regular interest thereon shall be held in trust for the payment of the benefits provided for herein to the member or his beneficiaries.

   Each member shall be deemed to consent to the deduction from his compensation of the contribution provided for herein. The payment of said compensation less said payroll deductions shall be deemed a full and

On September 29, 1978, plaintiffs filed a notice of claim with defendant in accordance with the requirement of § 63–30–12 of the Utah Governmental Immunity Act that a claim be filed with the attorney general and the agency concerned within one year after a cause of action arises. On the same date plaintiffs filed a complaint seeking the payment of benefits paid into the retirement system on plaintiffs' behalf by the hospital. An amended complaint was filed July 30, 1979. In the complaint, plaintiffs sought (1) a declaratory judgment that defendant's application of § 49–10–24 to plaintiffs was invalid, or if § 49–10–24 is applicable and deprives plaintiffs of the moneys contributed by their employer to their retirement fund, that it is unconstitutional; and (2) a finding of breach of contract based on defendant's failure to provide benefits to which they are entitled. Plaintiffs asked for an award of $300,000, which represented the hospital's payments to the retirement system.

Defendant moved to dismiss the complaint for failure to state a claim upon which relief could be granted and for failure to join indispensable parties. The trial court granted the motion without stating the basis for its order. The dismissal was stated to be without prejudice to the refiling of the complaint.[4]

On appeal plaintiffs seek reversal of the district court's order on the grounds that plaintiffs have complied with the Governmental Immunity Act to the extent that the Act applies and that Payson City and Payson City Hospital are not indispensable parties, but even if they are their joinder should be ordered rather than the claim dismissed.

Defendant's memorandum of law in support of its motion states that the motion to dismiss for failure to state a cause of action is based on the failure of plaintiffs to comply with the Utah Governmental Immunity Act. We assume that the trial court granted the motion to dismiss in whole or in part on that ground.

■ We hold, however, that plaintiffs' action is not barred by the Governmental Immunity Act. Plaintiffs complied with the requirements of the Act. The notice of claim was filed with the attorney general and the agency concerned within a year after the cause of action arose as provided by § 63–30–12. The filing of the original complaint on the same day as the notice of claim did not nullify the effect of the notice of claim. The amended complaint, filed as a matter of right pursuant to Rule 15(a), Utah Rules of Civil Procedure, indicated plaintiffs' compliance with the Governmental Immunity Act and was filed within one year after denial of the claim or after the end of the 90-day period in which the claim is deemed to have been denied.

■ The other ground for dismissal asserted by defendant, failure to join indispensable parties, is based on the contention that any rights plaintiffs may have arose by reason of their employment with Payson City and the Payson City Hospital and that the matter cannot be properly adjudicated unless such entities are also made parties defendant in the action.

Rule 19(a), U.R.C.P., requires the joinder of "persons having a joint interest." This Court, in *Stone v. Salt Lake City*, 11 Utah 2d 196, 356 P.2d 631 (1960), stated the rule that a necessary party is one whose presence is required for a full and fair determination of his rights, as well as of the rights of the other parties to the suit.

It has not been shown that either the hospital or the city has a joint interest in plaintiffs' suit for recovery of employer

---

complete payment of the salary of said employee.

(b) Commencing with the effective date of its participation as an employer under the provisions of this act, each employing unit shall contribute to the retirement fund monthly a matching amount equal to the

contributions made to the fund by all its covered employees as required in (a) above.

4. The court did not refer to the amended complaint filed July 30, 1979, the day before the motion to dismiss was heard. That complaint, unlike the original one, alleged compliance with the Governmental Immunity Act.

contributions made to the retirement fund. A decision as to plaintiffs' rights to the payments made to the fund on their behalf by the employer will not affect the legal rights of Payson City or Payson City Hospital. We therefore find that a full and fair determination can be made of plaintiffs' rights without the joinder of Payson City and the hospital.

The question remains, however, whether this case was properly initiated in the district court. Section 49–10–49 of the Utah State Retirement Act empowers a "board of review" to review administrative rulings as to benefit claims. That section provides in pertinent part:

> Any member who is dissatisfied by a ruling of the administrator in regards to a benefit claim may request a review of his claim by the board. If he is dissatisfied by such a review he shall have the right to demand a hearing before the board .... Any applicant may file an application for rehearing ... after ... the determination by the retirement board ...
>
> The determination of the retirement board ... shall be final, except that a member if he so desires may appeal the decision of the board to a district court of the state of Utah.

■ Pursuant to this provision, an adverse determination by the administrator must be reviewed by the board of review before the right to judicial review attaches. The right of appeal afforded a dissatisfied member is statutory and dependent upon compliance with the terms of the statute authorizing such review. *Ross v. Industrial Comm'n*, 82 Ariz. 9, 307 P.2d 612 (1957). See *Campbell Building Co. v. State Road Comm'n*, 95 Utah 242, 70 P.2d 857 (1937).

Plaintiffs applied for judicial relief from an administrative determination without exhausting their administrative remedies by appealing to the retirement board. It is not merely the initiation of prescribed administrative procedures, but also the pursuit of all administrative procedures to their appropriate conclusion, that is a prerequisite to judicial relief. See *Helm v. Utah State Highway Patrol Civil Service Comm'n*, Utah, 556 P.2d 210 (1976); *Fur Breeders Agricultural Cooperative v. Wiesley*, 102 Utah 601, 132 P.2d 384 (1942).

■ Exhaustion of administrative remedies may not be necessary when it would serve no useful purpose. But plaintiffs' failure to exhaust in this case deprived the retirement board of the opportunity to hear, analyze, and critically review a matter within the purview of its particular responsibility and expertise. The review board's view of the meaning of the terms of the Act, and possibly the manner in which the retirement fund is administered, is information which a reviewing court might find necessary to have to make an informed decision.

■ Plaintiffs' assertion of a constitutional issue does not alter the necessity for compliance with the requirement of first adjudicating their claim before the retirement board. Administrative agencies do not generally determine the constitutionality of their organic legislation, *Public Utilities Comm'n of California v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); 3 Davis *Administrative Law Treatise* § 20.04 (1958). But the mere introduction of a constitutional issue does not obviate the need for exhaustion of administrative remedies. As stated in *Public Utilities*, 355 U.S. at 539–40, 78 S.Ct. at 450, "if ... an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued."

■ The instant case involves issues other than the constitutional claim, and pursuit of plaintiffs' administrative remedies might obviate the need of addressing that issue. If not, judicial attention to the constitutional issue, as well as other issues, will be better framed by the structure of a factual context. See *W. E. B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967); *A Quaker Action Group v. Morton*, 460 F.2d 854 (D.C. Cir. 1971).

We reverse and remand the case to the lower court for reference to the retirement board.

No costs awarded.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.