2003 UT 7

Wayne PATTERSON, an individual, James Patterson, an individual, and Patterson Construction, Inc., a Utah Corporation, Plaintiffs and Appellants,

v.

AMERICAN FORK CITY, a municipal corporation, and Does 1–50, Defendants and Appellees.

No. 20010513.

Supreme Court of Utah.

March 21, 2003.

D. Miles Holman, Daniel F. Van Woerkom, Sandy, for plaintiffs.

Glenn C. Hanni, Kristin A. VanOrman, Salt Lake City, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This appeal results from the trial court's dismissal, with prejudice, of all the appellants' claims.

## BACKGROUND

¶ 2 The appellants, Wayne Patterson, James Patterson, and Patterson Construction, Inc. (Pattersons), are the owners of residential developments and real property located within and adjacent to American Fork City (the City). This case involves a number of disputes regarding land use decisions made by the City affecting several of Pattersons' properties. Pattersons allege that in their dealings with the City, the City has violated their civil rights on numerous occasions through the imposition of various fees, inequitable application of city ordinances, refusal to permit development in some locations, failure to annex some of its developments, and other actions Pattersons describe as "unreasonable, arbitrary, capricious and illegal" treatment.

¶ 3 Pattersons first filed a notice of claim against the City on July 18, 1994. A second notice of claim was filed on November 21, 1994. Pursuant to court order, Pattersons amended their complaint on August 18, 2000. Pattersons' motion for leave to amend their second amended complaint was granted on January 29, 2001, and Pattersons filed their second amended complaint on April 23, 2001. Pattersons' complaint claimed equitable estoppel/detrimental reliance, conspiracy to deprive them of their civil rights under 42 U.S.C. § 1985(3), violation of 42 U.S.C. § 1983, declaratory relief, injunctive relief, deprivation of liberty and property without due process of law under the Fifth Amendment of the United States Constitution, and violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution, violation of the due process and equal protection provisions in the Utah Constitution, violation of fundamental principles embodied in the Utah Constitution, and unlawful retaliation.

¶ 4 American Fork City subsequently filed a rule 41(b) motion to dismiss Pattersons' claims in their entirety with prejudice. The City argued in its motion that (1) Pattersons' notice of claim had expired, (2) Pattersons had failed to exhaust their administrative remedies, and (3) the City is immune from Pattersons' substantive claims under the Utah Governmental Immunity Act (UGIA). Sections 63–30–1 to –37 (1997 Supp.2001). Pattersons argued that a rule 41(b) motion was only a jurisdictional challenge that did not apply to their substantive claims and that various exceptions to the governmental immunity doctrine prevented the application of the UGIA to their constitutional, contractual, and equitable claims. The City subsequently challenged the substance of Pattersons' remaining constitutional, contractual, and equitable claims in its reply brief.

¶ 5 The trial court granted the City's motion to dismiss all of Pattersons' claims with prejudice. Pattersons filed their notice of appeal on June 5, 2001.

## STANDARD OF REVIEW

■ ¶ 6 In its judgment of dismissal, the trial court did not specify on which rule of civil procedure it relied, requiring us to examine the procedural history of the case in order to identify the proper standard of review. The City's motion to dismiss was premised on rule 41(b) of the Utah Rules of Civil Procedure, which authorizes a defendant, prior to the plaintiff's presentation of evidence, to move to dismiss a case "for failure of the plaintiff to prosecute or comply with these rules or any order of court." Utah R. Civ. P. 41(b). Following the United States Supreme Court's interpretation of federal rule 41(b), we have previously held that such a "failure to satisfy a precondition to suit is an 'initial bar' that results in a 'lack of jurisdiction'" under rule 41(b). *Madsen v. Borthick*, 769 P.2d 245, 249 (Utah 1988) (quoting *Costello v. United States*, 365 U.S. 265, 284–88, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961)).

■ ¶ 7 In its rule 41(b) motion, the City argued that (1) Pattersons' notice of claim had expired, (2) Pattersons had failed to exhaust their administrative remedies, and (3) the City is immune from Pattersons' substantive claims under the UGIA. Pattersons argue that since a rule 41(b) motion concerns only a plaintiff's failure to satisfy a precondition to suit, the City's motion only operated as a jurisdictional challenge based on Pattersons' alleged failure to file a timely complaint and failure to exhaust administrative remedies prior to filing suit. They further argue that a rule 41(b) motion does not authorize the trial court (prior to the presentation of plaintiff's evidence) to reach the merits of the case, including the City's possible immunity under the UGIA and Pattersons' remaining substantive constitutional, contractual, and equitable claims. Pattersons correctly observe that the proper method of seeking dismissal of such substantive issues is to file a rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. Utah R. Civ. P. 12(b)(6). A rule 12(b)(6) motion to dismiss challenges a plaintiff's " 'entitle[ment] to relief under the facts alleged or under any state of facts they could prove to support their claim.' " *Clark v. Deloitte & Touche, LLP*, 2001 UT 90, ¶ 14, 34 P.3d 209 (quoting *Prows v. State*, 822 P.2d 764, 766 (Utah 1991)).

¶ 8 In its judgment of dismissal, the trial court did not indicate whether its decision was based on rule 41(b) or rule 12(b)(6). In some circumstances, it might be necessary for us to remand for clarification in order to determine the proper standard of review on appeal. However, we have previously assumed that a dismissal was premised on rule 12(b)(6), even though the trial court did not explicitly mention this fact in its ruling. *See Cazares v. Cosby,* 2003 UT 3, ¶ 13, 65 P.3d 1184. Given that the trial court reached both the jurisdictional and substantive issues, we conclude that the proper course is to apply the standard of review for rule 41(b) dismissals to the notice of claim and exhaustion of administrative remedies issues, and to apply the standard of review for rule 12(b)(6) dismissals to the remaining issues.

¶ 9 We will therefore review the trial court's grant of a motion to dismiss under rule 41(b) for correctness. *C & Y Corp. v. Gen. Biometrics, Inc.,* 896 P.2d 47, 53 (Utah Ct.App.1995). Alternatively, "[W]hen 'determining whether a trial court properly dismissed an action under rule 12(b)(6), we assume that the factual allegations in the complaint are true and we draw all reasonable inferences in the light most favorable to the plaintiff.'" *Valley Colour, Inc. v. Beuchert Builders, Inc.,* 944 P.2d 361, 362 (Utah 1997).

## ANALYSIS

### I. PATTERSONS' STATE LAW CLAIMS

#### A. Notice of Claim Requirements Under Utah Governmental Immunity Act

¶ 10 The trial court held that notice of claim requirements of the Utah Governmental Immunity Act barred Pattersons' claims. *See* Utah Code Ann. §§ 63–30–1 to –37 (1997 & Supp.2001). A plaintiff's failure to comply with the UGIA's notice of claim provisions deprives the trial court of subject matter jurisdiction. *Rushton v. Salt Lake County,* 1999 UT 36, ¶ 18, 977 P.2d 1201. Section 63–30–13 of the UGIA bars a claim against a political subdivision unless a notice of claim is filed "within one year after the claim arises." Utah Code Ann. § 63–30–13. Under section 63–30–14, the municipality then has ninety days to notify the claimant of the approval or denial of the claim. If a claim is denied, the claimant may bring an action in district court against the municipality, but such a claim must be brought within one year after denial of the claim, or within one year after the ninety-day denial period has expired. Utah Code Ann. § 63–30–15.

¶ 11 Pattersons' two notices of claim against the City were filed on July 18, 1994, and November 21, 1994, respectively. The trial court noted that, under the UGIA, Pattersons had until February 20, 1996 (one year and ninety days after the second claim was entered), to file suit. Since Pattersons did not file suit until July 28, 1997—over a year and a half after the deadline for doing so had expired—the trial court held that the UGIA barred Pattersons' claims.

¶ 12 On appeal, Pattersons claim that the trial court erred in finding that the UGIA barred their claims because the UGIA does not apply to their federal constitutional claims, state constitutional claims, contractual claims, or equitable claims. We treat Pattersons' state and federal constitutional claims in Parts II and III, respectively. Subsection B of this Part addresses Pattersons' failure to exhaust their administrative remedies and encompasses their equitable claims, which are generally not subject to the UGIA's notice requirements. *El Rancho Enter. Inc. v. Murray City Corp.,* 565 P.2d 778, 779 (Utah 1977).

¶ 13 With regard to their contractual claims, Pattersons correctly point out that the UGIA does not bar "actions arising out of contractual rights," and UGIA notice requirements simply do not apply to breach of contract suits against the state. Utah Code Ann. § 63–30–5 (1997). Citing this provision, Pattersons assert that they entered into a settlement agreement with the City's mayor, Ted Barratt, that resolved many of the differences between the parties. Pattersons contend that the City breached the terms of the settlement agreement that this action seeks to enforce. What is missing, however, is any evidence to support Pattersons' claim that there was a settlement that would give rise to a claim outside the UGIA. Nothing in

the record suggests that the American Fork City Council ever voted on or approved a binding settlement agreement. Though Pattersons may have engaged in lengthy negotiations with Mayor Barratt, the Mayor does not have the authority to bind the City Council, and the City itself was represented by legal counsel throughout the dispute. At most, Pattersons have shown that they attempted to reach a conciliation with the City through the Mayor's office, but this alone does not create a binding contract. Therefore, to the extent Pattersons failed to comply with the UGIA's notice of claim requirements, the trial court was correct to hold that Pattersons' non-equitable state-law claims are time-barred.

### B. Pattersons' Failure to Exhaust Administrative Remedies

¶ 14 The trial court also held that Pattersons' state law claims were barred because Pattersons failed to exhaust their administrative remedies. Under Utah Code section 10–9–1001:

> No person may challenge in district court a municipality's land use decisions made under this chapter or under the regulation made under authority of this chapter until that person has exhausted his administrative remedies.

Utah Code Ann. § 10–9–1001(1) (1999).

¶ 15 The American Fork City Development Code (Development Code), as authorized by section 10–9–1001, sets out the administrative procedures governing land use decisions by the City. Specifically, the Development Code establishes a Planning Commission that has authority to make reports and recommendations concerning city planning and development, and advise the City Council on their findings. The City Council is not bound by the decisions of the Planning Commission and can vote for or against any recommendations made.

¶ 16 The Development Code sets forth the process governing land use decisions. First, the developer must confer with the Planning Commission staff. The developer then must prepare a preliminary plan and submit required documents and statements to the staff. The staff then reviews the preliminary planning documents and statements and submits those documents to the Planning Commission. The Planning Commission then approves or disapproves the proposal based on its review of the preliminary plans, documents, and statements. The Planning Commission's approval does not constitute final approval of the project, however. Instead, the plans for the project are then taken to the City Council which reviews them and takes final action. In short, if a developer has a dispute regarding a land use decision, the developer must take the matter before the Planning Commission, receive a positive or negative recommendation, and then take that recommendation before the City Council for a final decision. If a developer fails to exhaust these administrative remedies prior to filing suit, the suit must be dismissed. See Seal v. Mapleton City, 598 P.2d 1346, 1347 n. 2 (Utah 1979) (holding that dismissal for failure to exhaust administrative remedies was appropriate where developers failed to seek relief through municipality's administrative procedures prior to filing suit).

■ ¶ 17 In this case, Pattersons failed to pursue any administrative remedies prior to filing suit, despite the fact that the City's Development Code clearly contemplates that land use decisions are to be directed through the Planning Commission and City Council. While they had an extensive list of complaints about the City regarding a wide array of projects, Pattersons never took those complaints to the Planning Commission. Consequently, Pattersons never obtained a final vote from the City Council from which they could properly appeal. Instead, Pattersons have leap-frogged over the entire administrative process and sought immediate relief for their grievances in district court. Where the legislature has imposed a specific exhaustion requirement such as that contained in section 10–9–1001, we will enforce it strictly. Pattersons offer no compelling reason to rule otherwise.

■ ¶ 18 Pattersons argue that a number of exceptions to the exhaustion doctrine apply here. Indeed, Pattersons correctly point out that they need not exhaust their administrative remedies before pursuing

their federal § 1983 claims. *Felder v. Casey,* 487 U.S. 131, 147, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (citing *Patsy v. Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). They also claim, however, that administrative remedies need not be exhausted to pursue state constitutional claims. This assertion is incorrect and Pattersons' cited authority does not support it. *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder County Sch. Dist.,* 2000 UT 87, ¶ 20, 16 P.3d 533, (holding only that a court's power to award damages for violation of a self-executing provision of the Utah Constitution rests on the common law). To the contrary, in *Nebeker v. Utah State Tax Commission,* 2001 UT 74, ¶ 16, 34 P.3d 180, we held that a plaintiff challenging a Tax Commission decision on state constitutional grounds was still required to exhaust administrative remedies, particularly where " 'an administrative proceeding might leave no remnant of the constitutional question.' " (quoting *Johnson v. Utah State Ret. Office,* 621 P.2d 1234, 1237 (Utah 1980)). We have no reason to believe that the City's administrative procedures were insufficient to resolve Pattersons' complaints, including the alleged state constitutional violations. Pattersons' bald assertion that the exhaustion requirement does not apply to state constitutional claims is not persuasive.

¶ 19 Pattersons also argue that exhaustion of administrative remedies "is not generally required . . . prior to maintaining an action for declaratory relief," relying on the court of appeals decision in *Bluth v. Utah State Tax Commission,* 2001 UT App. 138, ¶ 7, 26 P.3d 882. After the submission of Pattersons' brief in this case, however, we overruled the court of appeals in *Bluth v. Utah State Tax Commission,* 2002 UT 91, ¶¶ 2, 23, 54 P.3d 1147, and held that plaintiffs

seeking a declaratory judgment against the Tax Commission were required to exhaust their administrative remedies prior to filing suit in district court. Pattersons' remaining equitable claims are also barred by the exhaustion doctrine. While the UGIA may be inapplicable to some equitable claims, Pattersons cite no authority for the proposition that the administrative process can be avoided in favor of filing equitable claims directly in district court. Thus, Pattersons' remaining equitable claims must fail. *See Specialty Malls of Tampa, Inc. v. City of Tampa,* 916 F.Supp. 1222, 1229 (M.D.Fla.1996) (holding that developer's equitable estoppel claim was barred by failure to exhaust administrative remedies); *Williams v. Johnson,* No. 01–1138, 20 Fed.Appx. 365, 2001 U.S.App. LEXIS 29426 at *2 (6th Cir. Sept. 20, 2001) (unpublished opinion) (denying injunctive and declaratory relief for failure to exhaust administrative remedies). These equitable remedies would of course be available in any action challenging the initial administrative ruling.[1]

¶ 20 In addition, Pattersons have argued that they would suffer irreparable harm if required to exhaust administrative remedies, and that the exhaustion process would be futile. In support thereof, Pattersons offer only the cursory assertion that City officials are hostile to their rights and that they have "clearly pleaded sufficient facts indicating irreparable harm and the futility of any future attempts [to pursue administrative remedies]." We decline the apparent invitation to peruse Pattersons' lengthy list of allegations in search of specific facts supporting their claims of irreparable harm and futility. We note only that allegations of unfairness in the day-to-day relationship between Pattersons and City staff do not support a claim that the

---

1. The City has also argued that Pattersons' claims for injunctive relief, declaratory relief, and the reimbursement of fees are barred by the doctrine of res judicata. On October 5, 2000, the case of *HomeBuilders Ass'n of Utah v. City of American Fork,* Civil No. 940400483, was dismissed with prejudice pursuant to stipulation. Both Wayne and James Patterson are dues paying members of the HomeBuilders Association and actively supported that litigation. In the *HomeBuilders* case, the Association sought to in-

validate two of the City's ordinances imposing fees on new real estate developments on constitutional grounds. Pattersons' ninth cause of action in the instant case (seeking declaratory relief to determine the validity of those fees) mirrors the claim made in the *HomeBuilders* case. In light of our holding that Pattersons' claims for injunctive and declaratory relief are barred by their failure to exhaust administrative remedies, we need not reach the question of whether they are also barred by res judicata.

entire administrative appeals process is inoperative or unavailable.

¶ 21 Section 10–9–1001 requires Pattersons to exhaust their administrative remedies before filing in district court. Because they failed to do so, the trial court was correct in dismissing Pattersons' state law claims on these grounds.[2]

## II.  PATTERSONS' FEDERAL CLAIMS

*A.  Pattersons Have Not Alleged a Violation of a Constitutionally Protected Liberty or Property Interest Under 42 U.S.C. § 1983*

■■■ ¶ 22 In addition to their state law claims, Pattersons have made claims under 42 U.S.C. § 1983, which forbids any person acting under color of state law from depriving any citizen of their federal rights. 42 U.S.C. § 1983 (1994). Pattersons' claim that the City acted under color of law to deprive them of their substantive due process and equal protection rights with respect to many of their development projects. Pattersons further allege that the City has subjected them to "fundamentally unfair procedures, gross abuse of power, and invidious discrimination." The trial court held that the City's rejection of Pattersons' development projects did not amount to a violation of rights guaranteed under § 1983.

■■■ ¶ 23 "To state a cognizable substantive due process claim, [plaintiffs] must first allege sufficient facts to show a property or liberty interest warranting due process protection." *Crider v. Bd. of County Comm'rs*, 246 F.3d 1285, 1289 (10th Cir. 2001). In order to have a valid property interest in a state-created right, a plaintiff "must have more than a unilateral expectation of it;" instead, the plaintiff must have a "legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

¶ 24 Many courts have held that adverse municipal land-use decisions are not actionable under § 1983 because a developer does not typically have a claim of entitlement to a favorable decision. In *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence*, 927 F.2d 1111 (10th Cir.1991), the plaintiffs argued that denial of their rezoning request deprived them of their substantive due process interest in "making reasonable use of their property free from arbitrary and capricious restrictions imposed" by the city. *Id.* at 1119. The Tenth Circuit noted that the city had considerable discretion because the zoning statute prescribed a "reasonableness" standard for the city's refusal to rezone the property as requested by the developer. *Id.* at 1116. Given such discretion, the Tenth Circuit ruled that the developer could not point to any " 'rules or mutually explicit understandings that [would] support [their] claim of entitlement' to the rezoning of their property." *Id.* at 1117 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694 (1972)).

¶ 25 In *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.1982), a developer sued a municipality for denial of its constitutional rights in a dispute arising out of the municipality's refusal to authorize a proposed housing subdivision. *Id.* at 823. In dismissing the developer's federal law claims, the First Circuit observed that a municipality's rejection of a developer's proposal does not always amount to a violation of section 1983 because every planning dispute

> necessarily involves some claim that the [municipality] exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under

---

**2.**  The trial court also ruled that the City was immune from suit under Utah Code section 63–30–3, which provides that governmental entities are immune from suit for any injury arising from the exercise of a governmental function. Utah Code Ann. § 63–30–3 (1997). Section 63–30–10(1) of the Utah Code retains governmental immunity for injury caused by negligent acts of employees when the injury arises out of the exercise of a discretionary function. *Id.* Because we have held that the trial court was correct to dismiss Pattersons' state law claims for lack of notice and failure to exhaust administrative remedies, we need not treat the governmental function or "discretionary function" immunity issue.

section 1983. As has been often stated, "(t)he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution." *Id.* at 833. The *Creative Environments* court made clear that absent invidious discrimination, such as proof of racial animus, the "conventional planning dispute ... is a matter primarily of concern to the state and does not implicate the Constitution." *Id.* The court noted that "[t]his would be true even were planning officials to clearly violate, much less 'distort' the state scheme under which they operate." *Id.* at 833. *See also Chiplin Enter. v. City of Lebanon,* 712 F.2d 1524, 1527 (1st Cir.1983) (holding that the "claim that denial of [a development] permit was improperly motivated, unsupported by an allegation of the deprivation of a specific constitutional right, simply raises a matter of local concern, properly and fully reviewable in the state courts").

¶ 26 Pattersons argue that they have a legitimate claim of entitlement to approval of their development projects that satisfies § 1983's first hurdle. To support their claim, Pattersons cite our opinion in *Western Land Equities, Inc. v. City of Logan,* 617 P.2d 388 (Utah 1980), a case involving the retroactive application of zoning laws, also described as an issue of "zoning estoppel." *Id.* at 391. Pattersons rely solely on the following language from that opinion: "[A]n applicant is entitled to ... approval if his proposed development meets the zoning requirements in existence at the time of his application." *Id.* at 396. This edited quotation misrepresents the holding of that case. *Western Land Equities* involved a developer who sought approval to build a single-family residential subdivision in an area zoned for such use; the municipality rejected the proposal and specifically amended its zoning ordinance to prohibit that particular subdivision. *Id.* at 389–90. The issue was whether the zoning amendment could be retroactively applied to prohibit the developer's project. *Id.* at 390. Citing the need to ensure that the developer's investment in the subdivision plan based on the original zoning would not be completely lost, we held that the developer was entitled to approval of the subdivision plan if it was in compliance with the zoning require-

ments in existence at the time of the application, before the municipality's zoning ordinance amendment. *Id.* at 396.

¶ 27 *Western Land Equities* has no application here. Pattersons' complaints do not arise from a complete inability to develop any particular subdivision, but from ongoing disagreements with the City concerning the costs and design details associated with already-approved subdivisions. While Pattersons have set out a long list of complaints with the City, nowhere in their brief do they allege that any of their development projects was blocked by a retroactive application of an amended zoning ordinance. Nothing in *Western Land Equities* suggests that the "entitlement" to a building permit in the face of an amended zoning ordinance would extend beyond the facts in that case. Otherwise, the ability of the City to protect the public interest in specific land development cases would be supplanted by a rule that mere adherence to formal requirements *always* entitles a developer to approval, whatever the countervailing public interests might be. Additionally, Pattersons fail to acknowledge that *Western Land Equities* was not a § 1983 case, but an estoppel case. That is, we recognized the developer's entitlement to approval based on the developer's detrimental reliance on the original zoning ordinance, *id.* at 396, not because the developer was being deprived of a fundamental constitutional right. *Western Land Equities* does not save Pattersons' § 1983 claims.

¶ 28 Pattersons' second argument supporting their due process claim is that they have "clearly alleged the very heightened level of abusive, unfair treatment" required for a § 1983 claim. Reading all of the facts in the light most favorable to Pattersons' claims, we conclude that this case involves disputes about specific local development issues, not about the deprivation of constitutional rights. Pattersons have liberally peppered their brief with strong language indicting the City for dozens of its decisions, but they have failed to cite a single case where developers have succeeded when pursuing § 1983 claims on similar facts. Although Pattersons are entitled to "all inferences which are fairly supported by the evidence, [they] are not

permitted to build their case on mere 'opprobrious epithets' of malice, or 'the gossamer threads of whimsey, speculation, and conjecture.'" *Creative Environments,* 680 F.2d at 830 (citations omitted). Whatever unfairness Pattersons may have experienced, nothing in the facts presented sounds constitutional alarm bells.[3]

*B. Pattersons Have Failed to Allege an Equal Protection Violation Under the Fourteenth Amendment or 42 U.S.C. § 1985(3)*

¶ 29 In addition to their substantive due process claims, Pattersons have also alleged that the City has deprived them of their Fourteenth Amendment right to equal protection of the laws, and engaged in a conspiracy to deprive them of their right to equal protection under 42 U.S.C. § 1985(3) (1994). The Fourteenth Amendment forbids any person acting under color of state law from depriving an individual of the equal protection of the laws. U.S. Const. amend. XIV, § 1. Section 1985(3) provides a cause of action for any person or class of persons injured by a conspiracy organized "for the purpose of depriving, either directly or indirectly [such persons] of the equal protection of the laws." 42 U.S.C. § 1985(3) (1994).

¶ 30 The City argues that Pattersons' claim must fail because an equal protection claim must be based on membership in a particular group. That is, a decisionmaker must have taken or reaffirmed a particular course of action, at least in part, because of the plaintiff's membership in an identifiable group. *See Huebschen v. Dep't of Health & Social Servs.,* 716 F.2d 1167, 1171 (7th Cir. 1983) (holding that "[a] person bringing a claim under the Equal Protection Clause must show intentional discrimination ... because of his membership in a particular class, not merely that he was treated unfairly as an individual"). Thus, the City argues that Pattersons have not stated a valid equal protection claim because they have not alleged that they were treated unfairly because of their membership in a particular group.

¶ 31 Pattersons argue that a more recent line of federal cases has dispensed with the protected class requirement for alleging equal protection violations. In *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the United States Supreme Court held that the plaintiff property owner had stated an equal protection claim in alleging that a municipality had "irrational[ly] and wholly arbitrar[ily]" refused to connect the plaintiff's property to the city's water system unless plaintiff agreed to grant the city a thirty-three foot easement to install and maintain the connection rather than the fifteen foot easement required of other similarly situated residents. *Id.* at 565, 120 S.Ct. 1073. The Court affirmed the plaintiff's right to bring an equal protection claim as a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564, 120 S.Ct. 1073. In a separate concurrence, Justice Breyer cautioned that because zoning decisions will "almost always[ ] treat one landowner differently from another," it is the presence of evidence of "vindictive action," "illegitimate animus," or "ill will" that will distinguish "run-of-the-mill zoning cases" from "cases of constitutional right." *Id.* at 565–66, 120 S.Ct. 1073 (Breyer, J., concurring).

¶ 32 With respect to Pattersons' § 1985(3) claims, we believe that the requirement that claims be class-based survives the Supreme Court's decision in *Olech. See, e.g., Burns v. State Police Ass'n,* 230 F.3d 8, 12 n. 4 (1st Cir.2000) (holding that while *Olech* recognized a "class of one" for constitutional equal protection claims, the application of § 1985(3) "involves a statutory claim that extends to private conspirators," requiring adherence to "caselaw construing § 1985's references to equal protection to require racial motivation or other invidiously discriminatory animus against a class"). Thus, Pattersons' § 1985(3) claim fails for lack of group discrimination.

---

**3.** Because we uphold the trial court's dismissal of Pattersons' § 1983 claims on the ground that no deprivation of a protected liberty or property interest has occurred, we need not reach the question of whether or not those claims were ripe for decision.

¶ 33 We also find that Pattersons' allegations are insufficient to state a claim for an equal protection violation under *Olech's* "class of one" rationale. Federal courts have clarified that to make out a prima facie case for violation of equal protection under a "class of one" theory, "the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling,* 209 F.3d 1005, 1008 (7th Cir.2000); *accord Lakeside Builders, Inc. v. Planning Bd. of Town of Franklin,* No. 00–12170, 2002 WL 31655250, *3, U.S. Dist. LEXIS 4725 at *11 (D.Mass. Mar. 21, 2002). A showing of "uneven" enforcement of the law is not sufficient: what is required is a showing of a " 'totally illegitimate animus toward the plaintiff by the defendant.' " *Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir.2001) (quoting *Olech v. Vill. of Willowbrook,* 160 F.3d 386, 388 (7th Cir.1998), *aff'd on other grounds,* 528 U.S 562). The burden of proving discriminatory intent under *Olech* is " 'an onerous one.' " *Pariseau v. City of Brockton,* 135 F.Supp.2d 257, 264 (D.Mass.2001) (quoting *Hayden v. Grayson,* 134 F.3d 449, 454 (1st Cir.1998)).

¶ 34 Viewing the facts in the light most favorable to Pattersons, we have no choice but to dismiss their equal protection claim; Pattersons have not specifically alleged that any unequal treatment they experienced was the result of intentional discrimination grounded in personal animus. *See Bartell v. Aurora Pub. Schs.,* 263 F.3d 1143, 1149 (10th Cir.2001) (holding that to make a claim under "class of one" theory plaintiff must prove "he was singled out for persecution due to some animosity" on the part of defendant). Critical to demonstrating an intentional denial of equal protection is a specific allegation that the defendant had some irrational motive for treating the plaintiff differently from other similarly situated persons. *Donovan v. City of Haverhill,* 311 F.3d 74, 77 (1st Cir.2002); *Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92, 104 (1st Cir.2002). A thorough reading of Pattersons' lengthy complaint fails to yield any clue as to why the City may have singled out Pattersons for treatment different from other developers. While long on language decrying the City's arbitrary and capricious conduct, Pattersons' complaint falls short of providing any specific explanation of the source of this malevolence.[4] Thus, we are inclined to heed Justice Breyer's cautionary language in *Olech* and hold that Pattersons allegations of unfair treatment in this "run of the mill" zoning case do not amount to equal protection violations. *Olech,* 528 U.S. at 566, 120 S.Ct. 1073 (Breyer, J., concurring).

### C. Pattersons' "Takings" Claims are Not Ripe for Decision

¶ 35 We also find that the trial court was correct to dismiss Pattersons' Fifth Amendment takings claims. The Supreme Court has held that "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process '[yields] just compensation,' then the proper-

---

4. Under their claim for relief entitled "unlawful retaliation," Pattersons do assert that the City "induced Pattersons into purchasing and deeding a road to American Fork City as part of [a] settlement negotiation[, and] [t]he motive of American Fork City was to retaliate against the exercise of Pattersons' First Amendment and other rights in opposing various housing policies and decisions of American Fork City." This vague, even mysterious, reference to retaliation for Pattersons' exercise of their First Amendment rights provides the only hint about the source of tension between Pattersons and the City. However, this allegation is never linked in any way with their equal protection claim and could not support it in any case because the retaliation allegation pertains to a unique bilateral settlement agreement between Pattersons and the City.

There is no possibility that the City could have treated Pattersons differently than other "similarly situated" developers with respect to the deeded road because Pattersons were the only party so situated. Moreover, we note that the retaliation allegation goes completely unmentioned in Pattersons' lengthy statement of facts and is unaccompanied by any description of specific events that would give rise to retaliation. Conclusory allegations are insufficient to state a claim for an equal protection violation under *Olech. Body v. Watkins,* No. 01–1556, 51 Fed. Appx. 807, 810–11, 2002 U.S.App. LEXIS 21628 at **8 (10th Cir. Oct. 16, 2002). "[B]are assertions of differential treatment ... even if true, are insufficient to show a spiteful effort to 'get' " the plaintiff, as required under *Olech. Bartell,* 263 F.3d at 1149.

ty owner 'has no claim against the Government' for a taking." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1013, 1018 n. 21, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)). In Utah, the appropriate post-taking remedy is an inverse condemnation action, and Pattersons have not utilized that remedy. "Unless and until plaintiffs avail themselves of [the inverse condemnation] remedy, their takings claim will remain unripe." *Bell v. American Fork City,* 201 F.3d 447, 1999 WL 1079601, *2, 1999 U.S.App. LEXIS 30734, at *7 (10th Cir. Nov. 30, 1999).

## CONCLUSION

¶ 36 We uphold the trial court's dismissal of all of Pattersons' claims.

¶ 37 Associate Chief Justice DURRANT, Justice RUSSON, Justice WILKINS, and Judge BENCH concur in Chief Justice DURHAM's opinion.

¶ 38 Having disqualified himself, Justice HOWE does not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.