2011 UT 67

**Jennifer Jean JENSEN, Executor and Personal Representative of the Estate of Marilyn Hamblin, Plaintiff and Appellant,**

v.

**Kent JONES, Utah State Engineer, Defendant and Appellee.**

No. 20090742.

Supreme Court of Utah.

Oct. 28, 2011.

Bradley R. Cahoon, Troy L. Booher, Stewart Peay, M. Lane Molen, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Norman K. Johnson, Julie I. Valdes, Asst. Att'ys Gen., for defendant.

\* The word "alleged" was added to ¶ ¶ 2, 5.

1.  Ms. Hamblin passed away during the course of this litigation; pursuant to Utah Rule of Appellate Procedure 38(a), Jennifer Jean Jensen was

## AMENDED OPINION \*

Chief Justice DURHAM, opinion of the Court:

### INTRODUCTION

¶ 1 This appeal involves a challenge to the state engineer's authority to declare forfeiture of a water right as the basis for denying a change application. We hold that the state engineer lacks authority to declare a water right forfeited in reviewing a change application. We reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

### BACKGROUND

¶ 2 Marilyn Hamblin owned [1] Water Right No. 55–11041 as an alleged tenant in common. The water right provides for diversion of water from Spring Creek, a tributary of the Provo River. The parties stipulated before the district court that "Spring Creek ... flowed continuously with enough water to satisfy all rights until January 1, 2002 and has been completely dry since that date."

¶ 3 In 2004, Ms. Hamblin filed a permanent change application with the state engineer, seeking to change her water right's place of use and point of diversion to Highland City. The state engineer denied Ms. Hamblin's application on January 30, 2006. The state engineer's field reviews "indicate[d] that this water right has not been used for over 20 years." The state engineer noted that "the extended period of nonuse of this water right may have resulted in the water right ceasing pursuant to [Utah Code section] 73–1–4." Applying the statute, the state engineer concluded that "this change application would result in an enlargement and cannot be approved ... because no current uses of water are being made and can be abandoned in order to effect the change proposed." Apparently recognizing his limited statutory authority, the state engineer included the following caveat immediately after his conclusion:

substituted as the plaintiff and appellant in her capacity as executor and designated personal representative of Ms. Hamblin's estate.

In evaluating the various elements of the underlying right, it is not the intention of the State Engineer to adjudicate the extent of this right, but rather to provide sufficient definition of it to assure that other vested rights are not impaired by the change and/or no enlargement occurs. If, in a subsequent action, the court adjudicates that this right is entitled to either more or less water, the State Engineer will adjust the figures accordingly.

¶ 4 On March 1, 2006, Ms. Hamblin filed a petition for judicial review of the state engineer's decision. In the course of its proceedings, the district court ordered the state engineer to "specify his reasons and any statutory basis for approval or rejection of [Ms. Hamblin's application] in a revised order." On January 4, 2008, the state engineer issued a revised order, which again denied Ms. Hamblin's permanent change application. The state engineer noted that Utah Code section 73-3-3(2)(a) allows only a "person entitled to the use of water" to file a change application. Because "Ms. Hamblin has established no beneficial use under the water right ... since at least 1980," the state engineer rejected her application. The state engineer went on to discuss each of the statutory factors for review of change applications under Utah Code sections 73-3-3 and 73-3-8; based on his opinion that Ms. Hamblin's water right had been forfeited in the 1980s, he found that Ms. Hamblin did not satisfy all of the statutory requirements.

¶ 5 The parties stipulated for purposes of summary judgment before the district court that Ms. Hamblin's water right "has not been put to beneficial use since January 1, 1980." However, Ms. Hamblin alleged in her initial petition for judicial review—as well as in oral arguments before this court—that some or all of the water right has been put to beneficial use by at least some of the alleged tenants in common.

¶ 6 On July 13, 2009, the district court granted the state engineer's motion for summary judgment and denied Ms. Hamblin's cross motion for summary judgment. The district court based its decision primarily on the determination that Ms. Hamblin's water right had been forfeited by operation of law.

The district court cited to this court's opinion in *Nephi City v. Hansen,* 779 P.2d 673 (Utah 1989), for the principle that forfeiture occurred automatically by operation of the version of Utah Code section 73-1-4 in effect at the time of Ms. Hamblin's nonuse. The district court also rejected Ms. Hamblin's argument that later changes to the forfeiture statute—which require judicial action before a forfeiture occurs, *see* UTAH CODE ANN. § 73-1-4 (2008)—applied retroactively. Instead, the district court held that the "change was substantive, not procedural, and therefore, that the amendments should not apply" to prevent automatic forfeiture of Ms. Hamblin's water right.

¶ 7 Ms. Hamblin appeals both the grant of the state engineer's motion for summary judgment and the denial of her motion for summary judgment. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(f) (Supp.2010).

## STANDARD OF REVIEW

¶ 8 "We review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions...." *Petersen v. Riverton City,* 2010 UT 58, ¶ 8, 243 P.3d 1261 (alteration in original) (internal quotation marks omitted).

## ANALYSIS

¶ 9 Ms. Hamblin raises two arguments on appeal. First, she argues that the state engineer lacks the authority in the context of a change application to determine that a forfeiture has occurred. Second, she contends that there was no forfeiture because amendments to the forfeiture statute now require judicial process before a water right can be lost by nonuse. The state engineer counters that the amendments were not retroactive and that, nonetheless, Ms. Hamblin's right would have been forfeited by operation of law before the amendments took effect. We agree with Ms. Hamblin that the state engineer lacked statutory authority to consider non-adjudicated forfeiture when making a decision to approve or reject a permanent change application. Therefore, we do

not reach the question of whether the amendments to the forfeiture statute apply retroactively.

¶ 10 The state engineer is an executive officer tasked with "administer[ing] and supervis[ing] the appropriation of the waters of the state." *Whitmore v. Murray City,* 107 Utah 445, 154 P.2d 748, 750 (1944). We have previously held that, in fulfilling these duties, the state engineer "acts in an administrative capacity only and has no authority to determine rights of parties." *Id.* (citing *Eardley v. Terry,* 94 Utah 367, 77 P.2d 362 (1938)). As a result, "[t]he law appears to be well-settled that proceedings before the state engineer and appeals therefrom do not constitute adjudications of water rights." *Daniels Irrigation Co. v. Daniel Summit Co.,* 571 P.2d 1323, 1324 (Utah 1977); *see also Little Cottonwood Water Co. v. Kimball,* 76 Utah 243, 289 P. 116, 117 (1930) ("[T]he determination of existing [water] rights . . . is peculiarly a judicial function.").

¶ 11 We have applied these same principles to the state engineer's conduct in a change application proceeding. *See Daniels Irrigation,* 571 P.2d at 1324–25; *Whitmore,* 154 P.2d at 750. We have held that "the State Engineer does not have the authority to adjudicate all the issues that may arise in the context of a change application." *Badger v. Brooklyn Canal Co.,* 922 P.2d 745, 750 (Utah 1996). Instead, we have noted on at least two occasions that the state engineer, in reviewing a change application, is to focus on the statutory criteria presented in Utah Code section 73–3–8. *See id.* ("With respect to change applications, the jurisdiction of the State Engineer's office is thus circumscribed by the criteria upon which the statute permits it to base its decisions. Those criteria are largely set forth in Utah Code section 73–3–8(1) . . . ."); *see also Searle v. Milburn Irrigation Co.,* 2006 UT 16, ¶ 23, 133 P.3d 382. The statute governing change application proceedings "leaves the adjudication of the rights which the applicant may have . . . to the courts in another kind of a proceeding and not to the Engineer who is merely an executive officer." *United States v. Dist.*

*Court,* 121 Utah 18, 242 P.2d 774, 777 (1952), *denying reh'g to* 121 Utah 1, 238 P.2d 1132 (1951).

¶ 12 In previous cases before this court, the state engineer has conceded that a forfeiture determination is beyond the authority of the state engineer in approving or rejecting a change application. *See Wash. Cnty. Water Conservancy Dist. v. Morgan,* 2003 UT 58, ¶ 3, 82 P.3d 1125; *Jensen v. Morgan,* 844 P.2d 287, 289, 292 (Utah 1992); *cf. Shields v. Dry Creek Irrigation Co.,* 12 Utah 2d 98, 363 P.2d 82, 83 (1961) (noting that the state engineer, in the context of an application to appropriate, "ruled that the question as to whether water once appropriated had reverted to the public for nonuse or abandonment required legal determinations which are generally beyond the jurisdiction of his office"). The state engineer notes that in *Nephi City v. Hansen,* we upheld the state engineer's rejection of change applications based on forfeiture. 779 P.2d 673, 673 (Utah 1989). In that case, however, the authority of the state engineer to reach such a conclusion was not raised; we now disavow any implications arising from that case contrary to today's decision.

¶ 13 We hold that, consistent with our case law, the state engineer lacks authority to adjudicate the issue of forfeiture in the context of a change application proceeding. Instead, the state engineer must follow the statutory guidelines for approving or denying a change application. *See* UTAH CODE ANN. § 73–3–8(1) (Supp.2010).[2] The statute notes that "[i]t shall be the duty of the state engineer to approve an application if" five enumerated conditions are met; none of the conditions involves a determination of whether the water right has been forfeited. *Id.*

¶ 14 The state engineer argues that Utah Code section 73–3–3 provides additional factors by which the state engineer may evaluate change applications. We disagree. Section 73–3–3 does state that "[a]ny person entitled to the use of water may make permanent or temporary changes in the: (i) point of diversion; (ii) place of use; or (iii)

---

2. Because there have been no substantive changes to the relevant statutes that would affect this opinion, we cite to the current versions unless otherwise indicated.

purpose of use." *Id.* § 73–3–3(2)(a). The state engineer argues that this language allows the state engineer to determine whether an individual is "entitled to the use of water" before approving a change application. Section 73–3–3, however, concerns the duties of *applicants* in *filing* a change application. The only language in section 73–3–3 regarding the duties of the *state engineer* in *reviewing* permanent[3] change applications is that "[t]he state engineer shall follow the same procedures . . . with respect to applications for permanent changes . . . as provided in this title for applications to appropriate water." *Id.* § 73–3–3(5)(a). These procedures are provided for in section 73–3–8, which as noted above unequivocally states that the state engineer must approve an application if the five enumerated conditions are met.[4]

¶ 15 The state engineer still has several options if it appears that the water right may have been forfeited through nonuse. "Section 73–2–1 confers upon the state engineer full authority to bring suit to enjoin unlawful appropriation and diversion," which we noted "is the consequence if [the applicant's] right has reverted to the public." *Glenwood Irrigation Co. v. Myers,* 24 Utah 2d 78, 465 P.2d 1013, 1015 (1970). The state engineer may stay a change application pending resolution of such an adjudication. *Cf. Salt Lake City v. Silver Fork Pipeline Corp.,* 2000 UT 3, ¶ 14, 5 P.3d 1206 (noting state engineer stayed consideration of change applications pending resolution of quiet title litigation), *overruled on other grounds by Otter Creek Reservoir Co. v. New Escalante Irrigation Co.,* 2009 UT 16, 203 P.3d 1015. The state engineer also appears to have the authority to "grant[ ] conditional approval of change applications." *Strawberry Water Users Ass'n v. Bureau of Reclamation,* 2006 UT 19, ¶ 5, 133 P.3d 410; *see also* UTAH CODE

ANN. § 73–3–3(7)(b); *Tanner v. Humphreys,* 87 Utah 164, 48 P.2d 484, 488 (1935). However, the state engineer lacks the authority to simply declare that a forfeiture has occurred and thereby deny a change application. If the state engineer cannot identify a basis for rejecting the change application pursuant to section 73–3–8(1), the state engineer must either approve the application or pursue one of the other options listed above.

¶ 16 We note that our review in this case is limited to whether the state engineer in the first instance could have considered non-adjudicated forfeiture in reviewing a change application. Although the district court appears to have agreed with the state engineer that the water right was forfeited, "[t]he district court's judgment in reviewing the engineer's decision is limited to the issues determinable by the engineer" and "the court may not determine issues not within the power of the engineer to determine." *Dist. Court,* 238 P.2d at 1136. Furthermore, we have noted that it would be "a misnomer to call it an appeal where the appellate tribunal may hear and determine issues which the original could not have determined and where such determination has the effect of adjudicating such issues which could not be adjudicated by the decision of the original officer or tribunal." *Dist. Court,* 242 P.2d at 777.

¶ 17 Thus, in this case we do not consider directly whether the water right at issue has been forfeited. Instead, we simply note that the state engineer lacked authority to consider non-adjudicated forfeiture in the context of a change application. The state engineer's rejection of Ms. Hamblin's change application was based on a forfeiture determination, which exceeded the scope of the state engineer's statutory authority. We therefore re-

---

3. Section 73–3–3 does discuss additional considerations for *temporary* change applications, but these considerations likewise do not include any basis for evaluating non-adjudicated forfeiture. *See* UTAH CODE ANN. § 73–3–3(6) (specifying how the "state engineer shall investigate all temporary change applications").

4. We pause to note that, under section 73–3–3, the state engineer may reject a change application if filed by a person holding a water right that *has been adjudicated* as forfeited. Such an appli-

cant has the same status as an individual who never owned a water right. Under section 73–3–3(4)(b), a change application must contain certain elements, including a description of the water right that forms the basis for the application. It is within the state engineer's ministerial powers to reject a change application that simply fails to identify any water right, or otherwise omits any of the required elements of a change application.

verse the district court's affirmance of the state engineer's decision.

## CONCLUSION

¶ 18 The state engineer lacks authority to adjudicate water rights and therefore may not consider non-adjudicated forfeiture when reviewing a change application. Instead, the state engineer is limited to considering the factors presented in Utah Code section 73–3–8(1) when deciding whether to approve or deny a change application, but may stay change application proceedings while pursuing an adjudication of forfeiture. We therefore reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

¶ 19 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Chief Justice DURHAM's opinion.