**2015 UT App 100**

## THE UTAH COURT OF APPEALS

BRIAN HIGH DEVELOPMENT, LC,
Plaintiff and Appellant,
*v.*
BRIAN HEAD TOWN,
Defendant and Appellee.

Memorandum Decision
No. 20130298-CA
Filed April 23, 2015

Fifth District Court, Cedar City Department
The Honorable G. Michael Westfall
No. 010500185

William L. Bernard, Attorney for Appellant

Eric Todd Johnson and Briant S. Platt, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.

DAVIS, Judge:

¶1    Brian High Development, LC (BHD) appeals from the
trial court's grant of summary judgment in favor of the Town of
Brian Head, Utah (the Town). We affirm.

¶2    BHD raises three arguments on appeal. First, it argues
that the trial court's entry of summary judgment incorrectly
concluded that BHD's inverse condemnation cause of action was
precluded as a matter of res judicata by an earlier suit between
the Town and BHD's predecessor-in-title. Next, BHD argues that
the trial court erred when it granted summary judgment on
BHD's equal protection claim on the ground that BHD did not
adequately plead the claim. Last, BHD argues that summary
judgment as to its breach of contract claim was not appropriate

because material facts related to that claim were in dispute. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

## I. Res Judicata and Inverse Condemnation

¶3    BHD first argues that its inverse condemnation claim was not precluded by principles of res judicata.[1] Res judicata has two branches, claim preclusion and issue preclusion, the latter of which is sometimes referred to as collateral estoppel. *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 389 (Utah Ct. App. 1987). Our analysis concerns only the claim preclusion branch of res judicata.[2] "[C]laim preclusion[] operates to bar a second claim

---

1. "If private property is taken or damaged for public use absent formal use of Utah's eminent domain power, a property owner may bring an inverse condemnation action under article I, section 22 [of the Utah Constitution] to recover the value of the property." *Gardner v. Board of County Comm'rs of Wasatch County*, 2008 UT 6, ¶ 28, 178 P.3d 893 (citation and internal quotation marks omitted).

2. The trial court seems to have transposed the headings in its order, labeling the section of its decision in which it concluded that issue preclusion did not apply as "Claim Preclusion" and vice versa. The court also used the wrong phrase in text at times, e.g., using the phrase "issue preclusion" before quoting the rules pertinent to claim preclusion. Further, although the court clearly concluded in its analysis that the inverse condemnation claim was subject to claim preclusion, the court stated in the conclusion section of its order that it granted summary judgment

(continued…)

between the same parties or their privies concerning the same claim or cause of action previously rendered final by judgment on the merits." *State ex rel. Utah State Dep't of Soc. Servs. v. Ruscetta*, 742 P.2d 114, 116 (Utah Ct. App. 1987).

> Whether a claim is precluded from relitigation depends on a three-part test. First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Mack v. Department of Commerce, Div. of Sec.*, 2009 UT 47, ¶ 29, 221 P.3d 194 (citation and internal quotation marks omitted). Whether res judicata applies in a particular case "presents a question of law that we review for correctness." *See PGM, Inc. v. Westchester Inv. Partners, Ltd.*, 2000 UT App 20, ¶ 3, 995 P.2d 1252.

¶4    Here, BHD's predecessor-in-title, Greyhound Financial Corporation (Greyhound), instituted litigation against the Town on November 28, 1989, which resulted in a 1994 summary judgment order dismissing the suit. In light of that prior litigation, the trial court in the current case determined that claim preclusion bars BHD's inverse condemnation cause of

---

(…continued)
to the Town on the inverse condemnation claim "on the basis of issue preclusion." Likewise, BHD bases its argument on appeal on issue-preclusion grounds. We consider the transposing of these terms to constitute purely typographical errors, and we accordingly analyze BHD's argument under the ground relied upon by the trial court in its analysis, i.e., claim preclusion.

action. The court ruled that Greyhound raised an inverse condemnation claim in its 1989 complaint; that Greyhound is BHD's privy; that the "1994 Order in the Greyhound litigation . . . rejected Greyhound's . . . inverse condemnation claims, which were either premised on the same allegations made in the instant litigation or should have been"; and that the 1994 order was a final judgment on the merits. *See Mack*, 2009 UT 47, ¶ 29.

¶5      BHD's argument on appeal centers on its assertions that Greyhound's 1989 complaint did not contain an inverse condemnation claim and that the 1994 district court never substantively ruled on an inverse condemnation claim in its order dismissing Greyhound's complaint. We disagree.

¶6      Although Greyhound's amended complaint is not in the record, we can ascertain from the allegations contained in Greyhound's original complaint and the language of the 1994 order that Greyhound did, indeed, raise an inverse condemnation claim. Most convincingly, the 1994 order specifically addresses, and in more than one finding, "Plaintiff's claims for inverse condemnation." We cannot fathom why the court would make such a direct reference to a specific claim if no such claim was actually raised. Moreover, the court definitively rejected Greyhound's inverse condemnation theory in the 1994 order, stating,

> There has been no inverse condemnation under Article 1, Section 22 of the Utah Constitution because tort-based damage claims are not compensable thereunder and there has been no "taking" or "damage." Plaintiff's claims for inverse condemnation under the Fifth and Fourteenth Amendments to the United States Constitution fail upon the same grounds.

¶7    BHD does not otherwise distinguish its inverse condemnation claim from the facts alleged by Greyhound or the rulings contained in the 1994 order. *See PGM, Inc.*, 2000 UT App 20, ¶ 2 n.1 ("[W]hen the moving party produces documents that make a facial showing that a particular issue was litigated, the burden falls to the nonmoving party to show that the record before the court did not establish that the issue was in fact litigated."). Accordingly, the trial court did not err in dismissing BHD's inverse condemnation claim on claim-preclusion grounds.

## II. Equal Protection Claim

¶8    Next, BHD argues that the trial court erred in granting summary judgment on its equal protection claim on the grounds that BHD did not adequately plead the claim. BHD bases its claim on a "class-of-one" theory.

¶9    "Equal protection of the law requires that similarly situated persons be treated alike." *Gardner v. Board of County Comm'rs of Wasatch County*, 2008 UT 6, ¶ 38, 178 P.3d 893 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). A person may raise an equal protection claim as a "class of one" by presenting "evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Patterson v. American Fork City*, 2003 UT 7, ¶ 33, 67 P.3d 466 (citations and internal quotation marks omitted). To sustain a class-of-one theory, a person must allege more than an "'uneven' enforcement of the law"; "what is required is a showing of a totally illegitimate animus toward the plaintiff by the defendant." *Id.* (citations and additional internal quotation marks omitted).

¶10    Here, BHD's third amended complaint alleges only that it received treatment disparate from similarly situated lot owners in a nearby subdivision and does not contain any allegation that

the Town "had some irrational motive for treating [BHD] differently from other similarly situated persons." *See id.* ¶ 34. Therefore, because BHD failed to adequately plead a prima facie case for violation of equal protection under a class-of-one theory, the trial court properly granted summary judgment in the Town's favor on that claim.

## III. Breach of Contract Claim

¶11 Last, BHD argues that disputed issues of material fact preclude summary judgment on its contract claim. "[I]t . . . takes [only] one sworn statement under oath to dispute the averments on the other side of the controversy and create an issue of fact" sufficient to preclude summary judgment. *Midland Funding LLC v. Sotolongo*, 2014 UT App 95, ¶ 17, 325 P.3d 871 (first alteration in original) (citation and internal quotation marks omitted). "An express or implied-in-fact contract results when 'there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain.'" *Heideman v. Washington City*, 2007 UT App 11, ¶ 25, 155 P.3d 900 (quoting *Rapp v. Salt Lake City*, 527 P.2d 651, 654 (Utah 1974)).

¶12 BHD's contract claim arises out of work completed by a contractor that included connecting and repairing water and sewer lines to a home situated on lots that BHD had sold within a subdivision. The contractor sued BHD for payment of the completed work. The parties settled, and as part of the settlement agreement, the contractor "assigned whatever claims he may have had against the Town to [BHD]." BHD then asserted a breach of contract claim against the Town, alleging that "the Town had an oral agreement with [the contractor] to perform work for the Town." In response to the Town's summary judgment motion, BHD provided an affidavit from its principal, David Smith, in which Smith explained that he was

"privy to conversations" during which the Town and the contractor established an oral contract "to repair water lines and replace a fire hydrant." BHD asserts that this affidavit is sufficient to raise a material question of fact as to whether an implied or express oral contract existed between the Town and the contractor.

¶13 The trial court considered BHD's argument to be conclusory. As the trial court noted, BHD "made no effort to comply with rule 7's requirement for controverting facts set forth in the initial memorandum supporting summary judgment," and its failure to do so was not "mere[ly] technical" because "despite claiming that 'there are substantial questions of material fact,' [BHD's] opposition memorandum fails to identify any." As a result, the trial court deemed the Town's statement of undisputed facts admitted. *See* Utah R. Civ. P. 7(c)(3)(A) ("Each fact set forth in the moving party's memorandum [supporting its motion for summary judgment] is deemed admitted for the purpose of summary judgment unless controverted by the responding party . . . ."). The undisputed facts indicate that BHD, not the Town, "contacted" the contractor to conduct the work at issue and that the Town stepped in to inform the contractor "where to hook in to the water main and how to do it" after the parties learned "that the water line had been extensively damaged, and a new water line would be required." In light of these undisputed facts, the trial court ruled, "Smith's conclusory assertion about the Town allegedly 'agree[ing] to engage [the contractor]' is insufficient to show that any kind of contract was intended or resulted from the interactions between the Town and [the contractor]." (First alteration in original.)

¶14 We agree. Accordingly, the trial court did not err in granting summary judgment to the Town on BHD's contract claims. We affirm the trial court's ruling in all aspects.

———————