**2019 UT App 4**

# THE UTAH COURT OF APPEALS

SALT LAKE CITY CORPORATION AND METROPOLITAN WATER
DISTRICT OF SALT LAKE AND SANDY,
Appellees,
*v.*
MARK C. HAIK AND PEARL RATY,
Appellants.

Opinion
No. 20170238-CA
Filed January 10, 2019

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 140900915

Paul R. Haik, Attorney for Appellants

Shawn E. Draney, Scott H. Martin, and
Dani N. Cepernich, Attorneys for Appellees

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

APPLEBY, Judge:

¶1  Salt Lake City Corporation (SLC) and the Metropolitan Water District of Salt Lake and Sandy (the District) filed a claim seeking a declaratory judgment as to the nature, validity, and priority of water rights claimed by Mark C. Haik (Haik) and Pearl Raty (Raty). Raty filed various counterclaims seeking to compel SLC to supply water to her lot in the Albion Basin Subdivision in Little Cottonwood Canyon. Haik and Raty appeal the district court's grant of partial summary judgment to SLC and the District on their declaratory judgment claim. Raty appeals the district court's dismissal of her counterclaims. We affirm.

BACKGROUND

¶2    This appeal involves two sets of claims: (1) those asserted by SLC and the District seeking a declaratory judgment of Haik's and Raty's claimed water rights, and (2) those asserted by Raty seeking to compel SLC to provide water to her undeveloped lot. We discuss separately the relevant facts of each set of claims.

*Haik's and Raty's Water Rights*

¶3    Haik and Raty claim water rights to Little Cottonwood Creek (the Creek), and seek to divert that water to their lots in the Albion Basin Subdivision. Their claimed rights are portions of an award made to the South Despain Ditch (the Ditch) in the Morse Decree of 1910. That award was a first primary right to a flow of .25 cubic feet per second (the Original Water Right).

¶4    In 1934, the Ditch signed an agreement (the 1934 Agreement) that granted SLC the right to use most of the Original Water Right "during the winter or non-irrigation season from October 1 to April 1 of the following year." During that "non-irrigation" period, the Ditch had only the right to 7,500 gallons per day, which was to be diverted from the Creek.

¶5    The Ditch was originally used by four separate Despain families. In 1950, one of those families sold its property, and the purchaser claimed a one-fourth interest in the Original Water Right. The state engineer approved a change application, which authorized the purchaser to move the point of diversion from the Creek to a well on his property and to use the water to support three houses, livestock, and irrigation. After the purchaser filed a proof map and proof of permanent change, the state engineer certified the change application and designated the purchaser's water right as WRN 57-7800.

¶6    In 1978, the property with WRN 57-7800's point of diversion (the well) and place of use was subdivided into four

lots. In 2000, the state engineer's records showed that the owner of one of those lots (Lot 31) owned 100 percent of WRN 57-7800. At that time, the state engineer approved a change application filed by Lot 31's owner, authorizing returning the point of diversion to the Creek. The approved change application specified that it was "subject to the conditions and provisions of" the 1934 Agreement.

¶7 In 2003, WRN 57-7800's owner conveyed it by quitclaim deed to six separate parties, in equal interests, as tenants in common. Haik was one of those six parties; Raty acquired her interest later.[1] WRN 57-7800 was divided into six new water right numbers, representing the six parties' relative interests. Each of the parties filed change applications with the state engineer, requesting to divert water from the Creek to their respective Albion Basin lots for year-round domestic use. The state engineer approved two of those change applications, but did not approve or deny Haik's or Raty's applications, which remain pending.[2]

¶8 SLC and the District filed this action seeking judicial review of the state engineer's decision on the two approved change applications. Additionally, they filed a cause of action seeking a declaratory judgment of the validity, nature, and priority of the water rights claimed by the two approved change

---

1. One of the original six parties was Butler Management Group, which conveyed its interest in WRN 57-7800 to Raty. Because this transaction does not affect the issues on appeal, we recite the facts as though Raty was one of the original six parties.

2. At oral argument, counsel for SLC and the District clarified that the remaining two portions of WRN 57-7800 were acquired by a third party who has agreed to be bound by the outcome of this case.

application holders as well as the rights claimed by Haik and Raty. SLC and the District eventually reached a settlement agreement with the holders of the two approved change applications, in which SLC acquired the water rights of those two parties. As a result, all claims were dismissed except the claim seeking a declaratory judgment of Haik's and Raty's claimed water rights.

¶9      In the petition, SLC and the District alleged they had standing to bring their claim: SLC "owns a majority of the rights" to use the Creek's water, including its rights acquired from the Ditch in the 1934 Agreement. The petition also alleged that the water drawn under SLC's rights is treated in the District's water treatment plant, and the District sells that water to its member cities. It estimated that approximately 500,000 Salt Lake County residents depend on the District for a portion of their water. Further, the District had submitted an application to appropriate "50,000 acre-feet of high flow" water from the Creek.

¶10     SLC and the District asserted that Haik's and Raty's proposed use of their claimed water rights would "impair and interfere with [SLC's and the District's] respective rights to divert, treat and provide [the Creek's] water to the members of the public." They also said that, if the owner of WRN 57-7800 were to change the point of diversion from the well on Lot 31 to the Creek—as authorized by an approved change application—the water available to Creek water right holders, including SLC and the District, would diminish.

¶11     Haik and Raty filed a motion to dismiss SLC and the District's claim for lack of standing. They asserted that the petition did not allege an injury or a reasonable probability of future injury, as required to invoke the court's jurisdiction. The court denied the motion to dismiss, concluding that SLC and the District "have standing to assert [their claim] based on

overlapping interests in a common source [of water], [the Creek]."

¶12    After discovery, SLC filed a motion for partial summary judgment. In that motion, it asked for a declaratory judgment that Haik's and Raty's claimed water rights to the Creek were limited by the 1934 Agreement. That is, during the "winter or non-irrigation months," Haik and Raty were each entitled to no more than their appropriate portion of the 7,500 gallons reserved by the Ditch in the 1934 Agreement.

¶13    The district court granted SLC's motion for partial summary judgment. It concluded that, because the 1934 Agreement was "admitted and unambiguous," "any rights owned by [Haik or Raty] are limited" by the 1934 Agreement.

¶14    SLC and the District filed another motion for partial summary judgment, claiming that any portion of WRN 57-7800 Haik and Raty acquired had been forfeited as the result of seven consecutive years of nonuse. *See* Utah Code Ann. § 73-1-4(2)(a) (LexisNexis 2012). In support, they asserted that Haik and Raty produced no evidence of having used any portion of WRN 57-7800 from 2003, when they obtained their claimed rights, through January 2014, shortly before SLC and the District filed their claim. Further, "there has been no opportunity for [Haik and Raty] to use WRN 57-7800, as they have no interest in Lot 31[,] . . . its current point of diversion." And although Haik and Raty offered evidence that others had used the water, they never entered an agreement with any other person or entity to allow that use, as the forfeiture statute requires. *See id.* § 73-1-4(2)(e)(i).

¶15    Haik and Raty opposed the motion for partial summary judgment. They argued that their water rights had been put to beneficial use and in support presented records and testimony that showed WRN 57-7800's water allowance had been diverted to the Ditch, and that others, including successors of the Original Water Right, had used substantially all of the diverted water.

They also argued that the motion did not legally establish forfeiture because it did not address the volume, materiality, or substantiality of any nonuse, but instead merely alleged there had been no use at all.

¶16   The district court granted SLC and the District's motion for partial summary judgment, declaring "that any portion of WRN 57-7800 acquired by [Haik and Raty] has been forfeited by nonuse." The court determined that SLC and the District "submitted straightforward facts, that . . . [n]o use has been made by anyone of WRN 57-7800 as it existed in Lot 31 since 2003, and no nonuse application has been filed." It noted that Haik and Raty did not own an interest in Lot 31 that would have allowed them to use WRN 57-7800's point of diversion. And although an approved change application authorized the owners of WRN 57-7800 to change the point of diversion from the well on Lot 31 to the Creek, Haik and Raty never attempted to certify that change.[3]

¶17   The court also considered Haik's and Raty's proposed evidence of beneficial use. It noted the evidence tended to show that water had been diverted to the Ditch, and that others, including successors to the Original Water Right, used the water. But the court concluded, "[D]iversion does not equal use, and does not support an inference of use." And absent a lease or

---

3. When a change application is approved, the applicant may "take any steps required to apply the water to the use named in the application" and "perfect the proposed application." Utah Code Ann. § 73-3-10(3)(b)–(c) (LexisNexis 2012). "Upon the satisfaction of the state engineer" that the authorized change "has been perfected in accordance with the application, and that the water . . . affected by the change has been put to a beneficial use," the state engineer issues a certificate of appropriation describing the beneficial use. *Id.* § 73-3-17(1).

agreement with Haik or Raty, the fact that others used the water was legally insufficient. (Citing Utah Code Ann. § 73-1-4(2)(e)(i).) The court explained that the Original Water Right is no longer a communal water right, and WRN 57-7800 is a separate right, representing a one-fourth interest of the Original Water Right. Because the relevant water right is WRN 57-7800, not the Original Water Right, the court concluded that use by the Ditch's successors was also insufficient. In the end, the court concluded that "any rights received under the 2003 transfer . . . were lost after 7 years of undisputed non-use."

### Raty's Counterclaims

¶18 Raty filed various counterclaims against SLC attempting to compel SLC to provide water to her lot in the Albion Basin Subdivision. Raty's lot is outside SLC's corporate boundaries, but the Albion Basin Subdivision is inside the city's approved service area. Specifically, SLC holds an approved change application authorizing it to divert water to the Albion Basin Subdivision for the domestic requirements of thirty-five houses.

¶19 First, Raty argued she was entitled to receive water from SLC under Article XI, Section 6 of the Utah Constitution, which requires municipalities to preserve, maintain, and operate the water it owns or controls "for supplying its inhabitants with water at reasonable charges." Utah Const. art. XI, § 6. Second, she argued she was entitled to protections from SLC's refusal to supply her lot with water under the due process clause of the Utah Constitution. *See id.* art. I, § 7. Third, she argued that, in refusing to supply her lot with water, SLC was in violation of the uniform operation of laws provision of the Utah Constitution. *See id.* art. I, § 24. Fourth, Raty sought a declaration that SLC's provision of water outside of its city limits was subject to regulation by the Public Service Commission.

¶20 SLC and the District moved to dismiss Raty's counterclaims, asserting each failed to state a claim upon which

relief could be granted. The district court agreed and dismissed Raty's counterclaims. It determined that Raty failed to allege she was entitled to water from SLC under Article XI, Section 6 because her lot was outside Salt Lake City's corporate boundaries and she was therefore not an "inhabitant" of Salt Lake City as required to receive protection under that provision.

¶21    The court also determined that Raty failed "to allege a violation of uniform treatment of laws" because she did not identify "any similarly situated person . . . that had been treated differently" and she did not allege "personal animus or bias" against her. Further, SLC's decision "to curtail further development in Albion Basin in order to protect the watershed" was "unquestionably a legitimate interest of the city." The court determined Raty's due process claim failed "for lack of a protectable property interest" because she "does not have a resident's right to water service." And the court refused to declare that SLC was subject to public regulation as a utility, citing multiple opinions of the Utah Supreme Court that rejected such a theory.

¶22    The district court entered a final judgment reflecting its rulings on SLC and the District's motions for partial summary judgment and Raty's counterclaims. Haik and Raty appeal.

ISSUES AND STANDARDS OF REVIEW

¶23    First, Haik and Raty argue that SLC and the District lacked standing to bring their claim. "[W]hether a given individual or association has standing to request a particular form of relief is primarily a question of law, although there may be factual findings that bear on the issue." *Washington County Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 18, 82 P.3d 1125 (quotation simplified). "We review such factual determinations made by a [district] court with deference," but "we closely review [district] court determinations of whether a given set of

facts fits the legal requirements for standing, granting minimal discretion." *Id.* (quotation simplified).

¶24    Second, Haik and Raty argue the district court lacked subject matter jurisdiction because SLC and the District failed to exhaust their administrative remedies. "[W]hether a court lacks subject matter jurisdiction due to a party's failure to exhaust administrative remedies is a question of law, reviewed for correctness." *Republic Outdoor Advert., LC v. Utah Dep't of Transp.*, 2011 UT App 198, ¶ 12, 258 P.3d 619.

¶25    Third, Haik and Raty argue the district court erred in granting partial summary judgment to SLC and the District. "We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a).

¶26    Fourth, Raty argues that the district court erred in dismissing her counterclaims. Whether the court properly granted a motion to dismiss is a question of law, which we review for correctness. *Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996). In considering a motion to dismiss, courts should "assume that the factual allegations in the complaint are true and . . . draw all reasonable inferences in the light most favorable to the plaintiff." *Id.* at 1219. "[D]ismissal is justified only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim." *Id.* at 1220.[4]

---

4. Although Haik and Raty identify seven issues, much of their brief consists of conclusory statements, which are "unsupported by analysis or authority" and fail "to properly cite to the record."

(continued…)

ANALYSIS

I. Standing

¶27  Haik and Raty argue that SLC and the District lacked standing to bring their claim. We disagree. Because the parties each claim rights to use water from the same source, SLC and the District have "a personal stake in the outcome of the dispute" as required by the traditional test for standing. *See Washington County Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 20, 82 P.3d 1125 (quotation simplified).

¶28  In Utah, the Declaratory Judgment Act gives "[e]ach district court . . . the power to issue declaratory judgments determining rights, status, and other legal relations within its respective jurisdiction." Utah Code Ann. § 78B-6-401(1) (LexisNexis 2012). The act specifies that it is meant "to be remedial." *Id.* § 78B-6-412. That is, the act's provisions are "to be liberally construed and administered" in order "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Id.*

¶29  Although declaratory judgments are "statutory in nature, [they] must meet the requisite justiciable and jurisdictional

---

(…continued)

*State v. Green*, 2005 UT 9, ¶ 12, 108 P.3d 710. Rule 24 of the Utah Rules of Appellate Procedure "requires an appellant's brief to contain the contentions and reasons of the appellant with respect to the issues presented with citations to the authorities, statutes, and parts of the record relied on." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196 (quotation simplified); *see also* Utah R. App. P. 24(a)(8). Thus, "while we will do our best to respond to the substance of [Haik's and Raty's] claims," we address only the arguments that are adequately briefed. *Rose v. Office of Prof'l Conduct*, 2017 UT 50, ¶ 64, 424 P.3d 134.

requirements of any action." *Boyle v. National Union Fire Ins. Co.*, 866 P.2d 595, 598 (Utah Ct. App. 1993). Before a district court can proceed in an action for declaratory judgment, "(1) there must be a justiciable controversy; (2) the interests of the parties must be adverse; (3) the parties seeking relief must have a legally protectible interest in the controversy; and (4) the issues between the parties must be ripe for judicial determination." *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (quotation simplified). "Requirements (2) and (3) represent the traditional test for standing," which is at issue here. *Id.*

¶30 The traditional test "requires a plaintiff to show some distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute." *Morgan*, 2003 UT 58, ¶ 20 (quotation simplified). "The need for such a personal stake frequently is described as a requirement that the plaintiff's injury be particularized," *Society of Prof'l Journalists v. Bullock*, 743 P.2d 1166, 1170 (Utah 1987) (quotation simplified), as opposed to a generalized grievance that is "more appropriately directed to the legislative and executive branches of the state government," *Jenkins*, 675 P.2d at 1149.

¶31 In an action seeking a declaratory judgment of a party's claimed water rights, the standing requirement is satisfied where there is "measurable evidence of a direct connection between the sources from which the parties have [or claim] rights to draw water." *Morgan*, 2003 UT 58, ¶ 25. In such a situation, the parties' claims to that water source are in direct conflict, and a declaratory judgment can "resolve uncertainties surrounding [their] legal rights." *Sanpete County Water Conservancy Dist. v. Price River Water Users Ass'n*, 652 P.2d 1302, 1307 (Utah 1982); *see also* Utah Code Ann. § 78B-6-412 (LexisNexis 2012) (explaining that the purpose of declaratory judgments is to relieve uncertainty).

¶32    Here, SLC and the District meet the traditional test for standing because the parties claim overlapping interests in a common source of water, the Creek. SLC "owns a majority of the rights" to use the Creek's water, including its rights acquired from the Ditch under the 1934 Agreement. Further, the District treats the water drawn under SLC's rights and sells it to cities around Utah. SLC and the District estimate that approximately 500,000 Salt Lake County residents depend on the District for a portion of their water. The District has also submitted an application to appropriate "50,000 acre-feet of high flow" water from the Creek.

¶33    As holders of rights to the Creek's water, SLC and the District may use the state's declaratory judgment statute to seek "relief from uncertainty and insecurity with respect to [their] rights, status, and . . . legal relations" with those who claim rights to that same source. *See* Utah Code Ann. § 78B-6-412; *see also Jenkins*, 675 P.2d at 1148 (observing that the Utah Declaratory Judgment Act authorizes "a new form of relief, which in some cases will provide a fuller and more adequate remedy than that which existed under the common law").

¶34    That is exactly what SLC and the District did in this case. Haik and Raty claim portions of the Original Water Right through their shares of WRN 57-7800. The state engineer has authorized the owner of WRN 57-7800 to divert water from the Creek to use on Lot 31. Further, Haik and Raty each filed a change application with the state engineer that, if approved, would allow them to divert the Creek's water to their lots in the Albion Basin Subdivision.

¶35    In short, SLC and the District have standing to seek a declaratory judgment of the nature, validity, and priority of Haik's and Raty's claimed water rights because the parties each claim rights to draw and use water from the same source. *See Morgan*, 2003 UT 58, ¶ 19.

II. Exhaustion of Administrative Remedies

¶36   Haik and Raty argue that the district court lacked subject matter jurisdiction because SLC and the District failed to exhaust their administrative remedies. As we understand their argument, they assert that SLC and the District must first appeal the state engineer's decision on the pending change applications.

¶37   Because "the state engineer acts in an administrative capacity only and has no authority to determine rights of parties," the district court did not lack subject matter jurisdiction based on SLC and the District's failure to appeal the state engineer's decision on the pending change applications. *See Jensen v. Jones*, 2011 UT 67, ¶ 10, 270 P.3d 425 (quotation simplified).

¶38   In their brief, Haik and Raty correctly note that a party may seek judicial review of a final action of the state engineer "only after exhausting all administrative remedies available." Utah Code Ann. § 63G-4-401(2) (LexisNexis 2016); *see also id.* § 73-3-14(1)(a) (2012) ("A person aggrieved by an order of the state engineer may obtain judicial review in accordance with Title 63G, Chapter 4, Administrative Procedures Act . . . ."). But SLC and the District do not seek judicial review of the state engineer's final action; they seek a declaratory judgment of the nature, validity, and priority of Haik's and Raty's claimed water rights. Such a "determination is beyond the authority of the state engineer in approving or rejecting a change application." *Jensen*, 2011 UT 67, ¶ 12.

¶39   The office of the State Engineer was created "to keep records of all established water rights and those to be acquired in the future, to supervise the distribution of the water, and to keep records of and regulate future appropriations and changes in the place of diversion, use and nature of the use." *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 29, 84 P.3d 1134 (quotation

simplified). In performing those duties, the state engineer "acts in an administrative capacity and does not have authority to adjudicate the rights of water users." *Id*. ¶ 30. Instead, the adjudication of parties' water rights is left to the courts. *See Jensen*, 2011 UT 67, ¶ 11 ("The statute governing change application proceedings leaves the adjudication of the rights which the applicant may have to the courts in another kind of a proceeding and not to the Engineer who is merely an executive officer." (quotation simplified)).

¶40 We therefore conclude the district court did not lack subject matter jurisdiction based on SLC and the District's failure to appeal the state engineer's decision on the pending change applications.

## III. Summary Judgment

¶41 Haik and Raty argue the district court erred in granting partial summary judgment to SLC and the District on their forfeiture claim. As we understand their brief, Haik and Raty challenge that ruling on three grounds. First, they argue the court erred in determining that Haik and Raty failed to put their water rights to beneficial use for the statutory seven-year period. Second, they argue the district court applied an incorrect legal analysis of forfeiture. Third, they argue the district court erred in determining that the forfeiture claim was not barred by the statute of limitations under Utah Code section 73-1-4. We discuss each argument in turn.

### A. Beneficial Use

¶42 Haik and Raty argue the district court erred in determining that they had not put their claimed water rights to beneficial use for the statutory seven-year period.

¶43 Whether a water right holder has put her "water to beneficial use is a mixed question of fact and law," *Butler*,

*Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 2004 UT 67, ¶ 43, 98 P.3d 1, and we grant the district court's ruling "significant, though not broad, discretion," *id.* ¶ 50. But "[w]ater forfeiture rulings generally depend heavily on questions of fact (e.g., whether and how much water was diverted and when, where, and to what end the diverted water was used)." *Id.* ¶ 33. We will reverse the court's findings of fact "only if they are clearly erroneous." *Id.* That is, "if they are not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the [district] court's determination." *Id.* (quotation simplified).

¶44　In Utah, "a drop of water is a drop of gold." *Delta Canal Co. v. Frank Vincent Family Ranch, LC*, 2013 UT 69, ¶ 19, 420 P.3d 1052 (quotation simplified). "[T]he state is vitally interested in seeing that none of the waters are allowed to run to waste or go without being applied to a beneficial use for any great number of years." *Eskelsen v. Town of Perry*, 819 P.2d 770, 775–76 (Utah 1991) (quotation simplified). The legislature has therefore "provided that a water right can be lost for nonuse." *Id.* at 776. Utah's forfeiture statute provides that "[w]hen an appropriator or the appropriator's successor in interest . . . ceases to use all or a portion of a water right for a period of seven years, the water right or the unused portion of that water right is subject to forfeiture." Utah Code Ann. § 73-1-4(2)(a) (LexisNexis 2012).

¶45　Here, the district court determined that Haik and Raty had not put their claimed water rights to beneficial use since they obtained them in 2003—a period exceeding seven years. The court based that conclusion on "straightforward facts" submitted by SLC and the District that showed a complete lack of use during that time.

¶46　After reviewing Haik's and Raty's arguments, we conclude they have failed to show that the district court erred in making that determination. As the district court noted, Haik and

Raty offer no evidence of having used the water associated with WRN 57-7800 since 2003. What they rely on is evidence establishing that water was diverted to the Ditch, and testimony that the diverted water was used by others, including parties with interests in the Original Water Right. They assert that those diversion records "absolutely establish that water was delivered," and that WRN 57-7800 has been used "to the present day by users and owners of the [Original Water Right]."

¶47     But this evidence is legally insufficient to show that Haik and Raty put their individual portions of WRN 57-7800 to beneficial use. The forfeiture statute states that a water right is subject to forfeiture when the unused water is "permitted to run to waste" or "beneficially used by others without right with the knowledge of the water right holder." *Id.* § 73-1-4(2)(d)(i)–(ii). Use by others will save a water right holder from forfeiture only when such use is "according to a lease or other agreement with the appropriator or the appropriator's successor in interest." *Id.* § 73-1-4(2)(e)(i). Because Haik and Raty offer no evidence of a lease or agreement under which any third party has used their portions of WRN 57-7800 since 2003, their evidence of use fails as a matter of law.

¶48     This is true regardless of whether successors to the Original Water Right have used the water that represents WRN 57-7800. As the district court noted, the Original Water Right is no longer a communal right. One of the four original Despain families sold the property, and the purchaser claimed a one-fourth interest, which became WRN 57-7800. SLC and the District's claim is directed at Haik's and Raty's portions of WRN 57-7800, not the Original Water Right.

¶49     In sum, we conclude that Haik and Raty have failed to show that the district court's ruling on beneficial use was in error. We agree with the court's conclusion that Haik and Raty "offer no evidence of having used the water associated with

WRN 57-7800 since" 2003, the time they claim to have acquired their respective portions of that right. Further, they offer no evidence of having entered a lease or other agreement authorizing any third party to use their water rights.[5]

B.      Analysis of Volume, Materiality, or Substantiality

¶50    Haik and Raty argue the district court erred by failing to analyze the volume, materiality, or substantiality of their nonuse. *See Delta Canal Co. v. Frank Vincent Family Ranch, LC,* 2013 UT 69, ¶¶ 39–40, 420 P.3d 1052. But as the district court noted in its ruling, there was "no need for quantitative analysis" because the evidence showed a complete absence of use during the statutory period.

¶51    In the context of forfeiture, "beneficial use has two different components: the type of use and the amount of use." *Id.* ¶ 22 (quotation simplified). As to the amount of use, "[f]orfeiture occurs when an appropriator fails to use *material* amounts of a water allowance" during the statutory period. *Id.* ¶ 39 (emphasis

---

5. To the extent Haik and Raty argue that their change applications protect their water rights from forfeiture, we disagree. The relevant provision states that forfeiture "does not apply to . . . a water right subject to an *approved* change application where the applicant is *diligently pursuing certification.*" Utah Code Ann. § 73-1-4(2)(e)(ix) (LexisNexis 2012) (emphasis added). Here, the only approved change application authorized the owner of WRN 57-7800 to use water on Lot 31, and Haik and Raty have never pursued certification of that application. Instead, they seek to divert water to their lots in the Albion Basin Subdivision as described in their pending, unapproved change applications. The district court was therefore correct in determining that the change applications did not protect Haik's and Raty's water rights from forfeiture.

added). That is, because "[a] water right is maintained only to the extent it is used efficiently and for a proper purpose," *id.* ¶ 45, "a water right may be forfeited either in whole or in part," *id.* ¶ 28.

¶52    The *Delta Canal* opinion, upon which Haik and Raty rely, provides guidance on the proper analysis in the context of partial forfeiture claims. *See id.* ¶¶ 39–41. Haik and Raty rely on two principles from *Delta Canal*, neither of which apply here. The first principle is that courts should focus on whether "an appropriator has failed to use material amounts of its volume allowance," as opposed to its "flow allowance." *Id.* ¶ 39. Second, "to deter forfeiture claims premised on de minimis non-use," courts should focus on the "materiality" or "substantiality" of any nonuse. *Id.* ¶ 40.

¶53    But, as SLC and the District note, those principles presuppose that the water right holder has put the water to some amount of use. Contrary to Haik's and Raty's assertions, the district court did not "repudiate" the analysis described in *Delta Canal*. Instead, it correctly determined that the analysis "is simple" in this case because there was no evidence of any beneficial use. That is, if there is no use, "there is no need for quantitative analysis" of the extent of that use.

¶54    We agree with the district court. A quantitative analysis of volume and materiality is necessary only when there is some evidence of beneficial use. Here, there is none.

C.    Statute of Limitations

¶55    Haik and Raty argue the district court erred in determining that SLC and the District's forfeiture claim was not barred by the statute of limitations in Utah Code section 73-1-4.

¶56    Under Utah Code section 73-1-4, a "water right may not be forfeited unless a judicial action to declare the right forfeited

is commenced . . . within 15 years from the end of the latest period of nonuse of at least seven years." Utah Code Ann. § 73-1-4(2)(c)(i) (LexisNexis 2012). The statute's language establishes that the fifteen-year limitations period does not begin to run until "the end" of the latest seven-year period of nonuse. *Id.* That is, to trigger the running of the statute of limitations, the water right at issue must have been returned to beneficial use.

¶57    Here, as previously discussed, *supra* ¶¶ 45–46, the district court determined that the undisputed evidence showed the water rights at issue have not been put to beneficial use since 2003. We therefore agree with the district court that the statute of limitations did not bar SLC and the District's forfeiture claim.

IV. Raty's Counterclaims

A.    Article XI, Section 6

¶58    Raty argues the district court erred in dismissing her claim under Article XI, Section 6 of the Utah Constitution. We disagree.

¶59    Article XI, Section 6 requires that a municipality preserve, maintain, and operate the water it owns or controls "for supplying its inhabitants with water at reasonable charges." Utah Const. art. XI, § 6. But that section does not create "a legal duty to provide water service to all members of the public." *Thompson v. Salt Lake City Corp.*, 724 P.2d 958, 959 (Utah 1986). Because Article XI, Section 6 mentions only "inhabitants," the duty does not extend to "others beyond the limits of the city." *Platt v. Town of Torrey*, 949 P.2d 325, 329 (Utah 1997) (quotation simplified); *see also Thompson*, 724 P.2d at 959.

¶60    Raty's appeal turns on whether she pleaded sufficient facts to establish that she is an "inhabitant" of Salt Lake City as defined in Article XI, Section 6. In dismissing her claim, the court concluded that "the common sense meaning of inhabitant in

relation to a municipality would be someone residing within the corporate boundaries of the city." Thus, because Raty's lot is outside SLC's city limits, with regard to that lot, the court concluded she had not alleged she was an inhabitant of SLC entitled to protection under Article XI, Section 6.

¶61    Raty asserts that the term inhabitant deserves a more "inclusive interpretation." She seems to base her argument on SLC's approved change application, which authorizes it to divert water to the Albion Basin Subdivision for the domestic support of thirty-five houses. *See supra* ¶ 18. She argues that, because her property is "part of [SLC's] established municipal service area," she is an inhabitant of SLC under Article XI, Section 6.

¶62    We reject Raty's argument. First, an approved change application authorizes, but does not require, the applicant to put the water to the use described in the application. Utah Code Ann. § 73-3-10(3)(b)–(c) (LexisNexis 2012) ("If the application is approved, the applicant shall be authorized upon receipt of the decision to . . . apply the water to the use named in the application[] and perfect the proposed application."). Only after the applicant perfects the approved application will the state engineer issue a certificate of appropriation. *Id.* § 73-3-17(1). Until that happens, the applicant may withdraw the application, or simply let it lapse. *See id.* § 73-3-17(4).

¶63    Thus, the approved change application "empowered" SLC to supply Raty's lot with water. *Searle v. Milburn Irrigation Co.*, 2006 UT 16, ¶ 23, 133 P.3d 382. But SLC's ability to supply water to the Albion Basin Subdivision does not amount to an obligation to do so. *See id.*

¶64    Further, in Utah, a municipality's decision to supply water to nonresidents is permissive. Utah Code Ann. § 10-8-14(1)(d) (LexisNexis 2015) ("A municipality *may* . . . sell and deliver the surplus product or service capacity of [water works] . . . not required by the municipality or the municipality's

inhabitants, to others beyond the limits of the municipality." (emphasis added)). And contrary to Raty's arguments, SLC's decision to supply water to people beyond its city limits does not create a constitutional obligation to serve all those within the approved service area. *See Platt*, 949 P.2d at 328, 330 (determining that, although a municipality "is under no obligation to provide water to nonresidents," "municipalities should act reasonably with their nonresident customers").

¶65   Imposing such an obligation would be contrary to Article XI, Section 6's purpose of securing to municipal "communities their water systems and [restricting] any sale or lease" to others outside those communities. *Genola Town v. Santaquin City*, 80 P.2d 930, 935 (Utah 1938). We allow municipalities to sell surplus water to avoid "shameful waste" when residents in adjacent areas are in need and would otherwise be "compelled to go without." *County Water System v. Salt Lake City*, 278 P.2d 285, 290 (Utah 1954). But their primary focus should be "the development and use of water for [the community's] present requirements and those reasonably to be anticipated in connection with the expected growth of the city." *Id.* And "because cities are creatures of constant growth, prudent civic planning requires the development and ownership of a water supply beyond present needs." *Id.*

¶66   In sum, because Raty's lot is "beyond the limits of the city," forcing SLC to provide her lot with water under Article XI, Section 6 would cut directly against that section's purpose. *See Platt*, 949 P.2d at 330 (quotation simplified). We therefore affirm the district court's dismissal of Raty's counterclaim under Article XI, Section 6.

B.     Due Process

¶67   Raty argues the district court erred in dismissing her claim seeking due process protection from SLC's refusal to supply her lot with water. Because Raty does not have a

protectable property interest in receiving water from SLC, the court properly dismissed this claim.

¶68    Article I, Section 7 of the Utah Constitution states, "No person shall be deprived of life, liberty or property, without due process of law." Utah Const. art. I, § 7. To state a claim under that clause, the plaintiff must "allege sufficient facts to show a property or liberty interest warranting due process protection." *Patterson v. American Fork City*, 2003 UT 7, ¶ 23, 67 P.3d 466 (quotation simplified). And "[i]n order to have a valid property interest in a state-created right, a plaintiff must have more than a unilateral expectation of it; instead, the plaintiff must have a legitimate claim of entitlement to it." *Id.* (quotation simplified).

¶69    Here, Raty bases her argument on the assertion that she has a valid property interest in receiving water services from SLC under Article XI, Section 6 of the Utah Constitution. But as discussed above, SLC is not obligated to provide Raty with water under Article XI, Section 6. *Supra* ¶¶ 58–66. At most, Raty has a unilateral expectation of receiving water from SLC because SLC is authorized to provide water in that area. But a unilateral expectation is insufficient to create a protectable property interest for purposes of Article I, Section 7. *Patterson*, 2003 UT 7, ¶ 23.

¶70    We therefore affirm the district court's dismissal of Raty's due process claim because Raty failed to allege a property interest warranting due process protection.

C.    Equal Protection

¶71    Raty argues the district court erred in dismissing her equal protection claim under Article I, Section 24 of the Utah Constitution. We affirm the court's dismissal of this claim.

¶72     This section of the Utah Constitution states, "All laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. This provision is meant to forward "the general principle that persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same." *Horton v. State Ret. Board*, 842 P.2d 928, 934 (Utah Ct. App. 1992) (quotation simplified). "When persons are similarly situated, it is unconstitutional to single out one person or group of persons from among a larger class on the basis of a tenuous justification that has little or no merit." *Malan v. Lewis*, 693 P.2d 661, 671 (Utah 1984).

¶73     Raty raised her equal protection claim as a "class of one." To establish such a claim, a plaintiff must present "evidence that the defendant deliberately sought to deprive [her] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Brian High Dev., LC v. Brian Head Town*, 2015 UT App 100, ¶ 9, 348 P.3d 1209 (quotation simplified). It is insufficient to allege an "uneven enforcement of the law; what is required is a showing of a totally illegitimate animus toward the plaintiff by the defendant." *Id.* (quotation simplified).

¶74     Here, Raty asserted that, because SLC provided water to others outside its municipal boundaries, it unconstitutionally discriminated against her by refusing to supply her with water. Raty's allegations are insufficient for various reasons. First, as previously discussed, *supra* ¶¶ 58–66, a municipality "does not have a legal duty to provide water service to all members of the public." *Thompson v. Salt Lake City Corp.*, 724 P.2d 958, 959 (Utah 1986).

¶75     Further, Raty did not allege "a totally illegitimate animus" toward her by SLC. *See Brian High Dev.*, 2015 UT App 100, ¶ 9 (quotation simplified). Instead, she asserted that "claims and defenses and contentions . . . over two decades demonstrate

adversity between the parties," and pointed to statements made by SLC representatives expressing an intent to deny her water. This evidence merely established that SLC did not intend to supply Raty's property with water, which it is not required to do. At most, Raty alleged an "uneven enforcement of the law," and such evidence is insufficient to establish a class of one claim. *See id*.

¶76     We therefore affirm the district court's decision to dismiss Raty's equal protection claim.

D.      Regulation by the Public Service Commission

¶77     Raty argues the district court erred when it dismissed her claim seeking a declaration that SLC was subject to public regulation as a utility. Because such regulation would be contrary to Article VI, Section 28 of the Utah Constitution, we reject Raty's argument. *See County Water System v. Salt Lake City*, 278 P.2d 285, 291 (Utah 1954).

¶78     Article VI, Section 28 provides, "The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions." Utah Const. art. VI, § 28. Raty acknowledges Utah Supreme Court precedent establishing that SLC "is not subject to the jurisdiction or regulation of the Public Service Commission" in distributing surplus water beyond its corporate limits. *County Water System*, 278 P.2d at 291. She nevertheless argues that SLC's control of nearly all the Creek's water rights and use "presents need to re-examine the exemption."

¶79     We disagree. As the Utah Supreme Court has noted, "whatever the considerations as to the wisdom of the city's being subject to regulation by the Public Service Commission

may be . . . to allow the commission to exercise jurisdiction over municipal property and the management thereof would be an unconstitutional delegation of power to a special commission forbidden by Article VI, Section [28]." *Id.* at 290. It is not the responsibility of the courts to evaluate "what is more desirable as a matter of policy." *Id.*

¶80   We therefore agree with the district court's conclusion that it was "bound by" Utah Supreme Court precedent on the issue. Accordingly, we affirm its decision to dismiss this claim.

CONCLUSION

¶81   SLC and the District had standing to bring their claim seeking a declaratory judgment of Haik's and Raty's claimed water rights, and the district court had subject matter jurisdiction over that claim. The district court did not err in granting summary judgment to SLC and the District on their claims that Haik's and Raty's water rights were limited by the 1934 Agreement and had been forfeited by nonuse. The district court also did not err in dismissing Raty's counterclaims against SLC. We therefore affirm the district court's judgment on all grounds.

_____